[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 07-15062

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 17, 2009
THOMAS K. KAHN
CLERK

D. C. Docket No. 07-20305-CR-CMA

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

TRAVIS BECKLES,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(April 17, 2009)

Before BIRCH and MARCUS, Circuit Judges, and FORRESTER,* District Judge.

---

    * Honorable J. Owen Forrester, United States District Judge for the Northern District of Georgia, sitting by designation.

MARCUS, Circuit Judge:

Travis Beckles appeals from his conviction and sentence for possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g). He claims that his conviction should be overturned both because the district court erred in denying his motion to suppress his post-arrest statements, and because the evidence was insufficient to permit a reasonable jury to find beyond a reasonable doubt that he knowingly possessed a firearm. Finally, Beckles argues that his sentence should be reversed because: (1) the district court plainly erred in sentencing him as a career offender under § 4B1.1 of the United States Sentencing Guidelines; (2) the sentence was unreasonable; and (3) the sentence violated the Fifth and Sixth Amendments to the United States Constitution since facts about his prior convictions were not found by the jury or charged in the indictment. After thorough review, we affirm both the conviction and the sentence.

I.

On April 24, 2007, Beckles was indicted by a federal grand jury in the United States District Court for the Southern District of Florida for possession of a firearm by a convicted felon in violation of 18 U.S.C. §§ 922(g) and 924(e). Shortly thereafter, he moved to suppress all of the post-arrest statements he made to the Federal Bureau of Investigation ("FBI"), arguing that they were obtained in

1

violation of his Fifth Amendment right to remain silent, due process, and Miranda

v. Arizona, 384 U.S. 436 (1966).

A.     The Suppression Hearing

After conducting an evidentiary hearing on the motion to suppress, the

magistrate judge determined that the defendant was fully advised of his Miranda

rights, understood his rights, and voluntarily, knowingly and intelligently waived

them before speaking to Special Agent John Jefferson of the FBI.  During the

evidentiary hearing, the government presented testimony from Special Agent

Jefferson, who interviewed Beckles on the day of his arrest and was present when

the defendant was read his Miranda rights.   Jefferson testified that Beckles was

not only read his Miranda rights but that Beckles also initialed each line of a

written copy of those rights after they were read aloud to him to indicate his

understanding.  Beckles then signed the entire Miranda rights form.

Special Agent Jefferson added that Beckles signed a form indicating that he

was not under the influence of alcohol or drugs and understood English.  Jefferson

also said that Beckles did not evince any difficulty in understanding the

documents that were read to him, or that Beckles was under the influence of any

drugs, alcohol, or medication. He testified that Beckles never requested an

attorney during the interview nor gave any indication he wished an attorney to be

2

present. Finally, Jefferson said that Beckles cooperated throughout the interview and even volunteered to assist the government as an informant.

Beckles also testified at the suppression hearing, giving an account at war with that of Special Agent Jefferson. Beckles claimed that he told Jefferson he wanted to consult with a lawyer and that he only initialed and signed the written copy of his <u>Miranda</u> rights because he was advised that he could not speak to a lawyer until the paper was signed. Beckles also testified that he did not tell the law enforcement officers he could read and write English, and signed the form indicating he could only because he was under the influence of marijuana. Beckles added that he did not understand what was going on during the interview, and explained that he had difficulty reading English but that he could understand spoken English.

The magistrate judge specifically credited Jefferson's account of his meeting with the defendant, finding that the defendant was fully afforded <u>Miranda</u> warnings orally and in writing, that the defendant understood his rights, and that the defendant knowingly and voluntarily answered the agent's questions. The district court adopted the magistrate judge's Report and Recommendation and denied the motion to suppress.

B.    <u>The Trial</u>

Beckles was tried and convicted on all counts by a jury. The government adduced the following evidence. On April 11, 2007, while Miami Dade Detective Diego Castro was investigating a different case, he saw Beckles loitering in a public facility. When Castro, who was wearing a vest and shirt identifying himself as a police officer, exited his car, the defendant fled on foot. Castro followed Beckles, identified himself as a police officer, and instructed the defendant to stop running. Beckles fled to a nearby apartment. Castro heard screams from the apartment, and, after he knocked on the door, a woman, Tiovanni Jones, emerged and told Castro to remove Beckles (whom she claimed not to know) from her apartment. Castro took Beckles into custody and placed him in a police car.

After Beckles was secured, Detective Castro spoke to Jones, who this time said that Beckles was her boyfriend, that he lived in the apartment at least part-time, and that he helped her pay the rent. Jones also claimed that there was a gun in the bedroom that she wanted removed for the safety of her child. After obtaining her permission to search the bedroom, Castro was unable to locate the gun. Castro then asked Beckles where the firearm was located. The defendant told Castro that there was a gun under the bed, but Castro was still unable to find it. Castro then brought Beckles into the apartment and Beckles told him that there was a shotgun under the mattress. Castro recovered the shotgun.

4

The prosecution also presented the testimony of Jones, who said that she lived in the apartment with her six-year-old son and her sister and that Beckles was her part-time live-in boyfriend. Jones added that neither she nor her sister kept a firearm in the apartment.

Later that day, FBI agents returned to Jones's apartment and photographed clothing and other items belonging to Beckles, including a toothbrush, a watch, and identification. Finally, the government offered at trial the testimony of Special Agent Jefferson, who said that, after being read his Miranda rights, Beckles acknowledged that he was a drug dealer associated with a street gang, that he acquired the shotgun for protection, and that he kept the firearm in the apartment where he lived.

The government presented two stipulations of fact: that the defendant had been convicted in May 2004 of a felony crime punishable by imprisonment for a term exceeding one year; and that the Browning shotgun recovered by Detective Castro on April 11, 2007 had traveled in commerce.

The defendant rested without presenting any additional witnesses.

C. The Sentence

The Presentence Investigation Report ("PSI") reported that the offense of conviction was subject to a 15-year minimum term of imprisonment and a

maximum of life. According to the PSI, "Detective Castro . . . recovered a sawed off Browning shotgun underneath the mattress" in the bedroom of Jones's apartment after Beckles told him that was where the gun was located. (PSI ¶ 6). It calculated his base offense level at 26, because an 18 U.S.C. § 922(g)(1) offense involves, among other things, a "firearm that is described in 26 U.S.C. § 5845(a)." (PSI ¶ 12). The PSI also found that Beckles is an armed career criminal subject to an enhanced sentence under 18 U.S.C. § 924(e) and the career offender provision contained in § 4B1.1 of the Sentencing Guidelines, because Beckles was 18 years old at the time of the instant offense, "the instant offense is a felony crime of violence (unlawful possession of a sawed-off shotgun)," and Beckles had two prior controlled substance felony convictions. (PSI ¶ 18). Thus, it calculated that Beckles had a total offense level of 37.

The PSI set forth Beckles's criminal history which included, in relevant part: (1) five convictions for possession with the intent to sell, manufacture, or deliver cocaine; (2) marijuana and cannabis possession offenses for which adjudication was withheld; and (3) a conviction for burglary of an unoccupied structure. Beckles's criminal history category was raised from V to VI, because he was a career offender under § 4B1.1. Based on a total offense level of 37 and a criminal history category of VI, the guidelines range was 360 months' to life

6

imprisonment, including a mandatory minimum sentence of 15 years under 18 U.S.C. § 924(e)(1). The PSI also noted that Beckles was 24 years old; was abandoned by his parents at the age of five; described his childhood as "crazy"; began using drugs and having legal problems at a young age; and has a six-year-old son with a brain tumor who is undergoing chemotherapy. It also stated that the woman who raised Beckles said that he had a drug problem and could not read or write.

Beckles objected to the PSI, arguing that (1) the Sentencing Guidelines provided an excessive sentence; (2) police reports or other impermissible sources were used to calculate his criminal history category improperly; (3) the government did not prove the prior convictions required for the 18 U.S.C. § 924(e) enhancement; (4) none of his prior state drug convictions qualified as serious drug offenses under 18 U.S.C. § 924(e) and the government should have been required to charge his prior felonies in the indictment and prove them beyond a reasonable doubt; (5) the enhancement pursuant to § 4B1.1 was unconstitutional because it relied on facts pertaining to Beckles's prior convictions not alleged in the indictment or proven to a jury beyond a reasonable doubt; and (6) applying the 18 U.S.C. § 924(e) enhancement was unconstitutional. Notably, Beckles did not object to the PSI's characterization of the firearm as a sawed-off shotgun or the

7

enhancement of his offense level due to the classification of his current conviction as a felony crime of violence under §4B1.1.

The district court conducted a sentencing hearing on October 17, 2007, during which the government put on a Miami-Dade Police Department fingerprint analyst to confirm that Beckles's fingerprints matched those on the certified Florida state court convictions ascribed to him for purposes of finding that his conduct fell within the career offender provision of the Sentencing Guidelines. The court concluded that the government had established the defendant's prior convictions and that the defendant qualified as an armed career criminal. The trial judge said the following:

> The defendant is considered a career offender because he was at least 18 at the time of this offense. This offense is a felony crime of violence, the unlawful possession of a sawed-off shotgun, and the defendant has at least two prior felony convictions of a controlled substance offense. The offense level, as noted in paragraph 18 of the presentence report, goes from an adjusted offense level of 26 up to 37 under the Sentencing Guideline § 4B1.1(b). So the defendant has started off today's sentencing hearing with an offense level of 37, a criminal history category of 6 and the Guidelines recommend a sentence of, at the low end, 360 months up to life.

The district court explained its sentence this way: "Beckles's long and continuous life of crime was never appropriately addressed at the State Court level. In other words . . . the defendant has 18 arrests that resulted in convictions

and/or juvenile adjudications" and he is only 24 years old. (Id. at 40-41). It concluded "[t]hat's a pretty extensive criminal history. It's pretty continuous . . . . [W]hat stands out is that the defendant was never appropriately punished for any of his prior felony convictions." (Id. at 41). The district court added that it had "given careful consideration to the statutory factors contained in 18 U.S. Code § 3553," and that it was "mindful of the need to have this sentence reflect upon the seriousness of the offense, provide deterrence and safeguard the community from you, Mr. Beckles, because you have shown that you cannot live within the law." (Id. at 43). A sentence of 360 months of imprisonment, five months of supervised release, and a $5,000 fine was imposed.

This timely appeal ensued.

II.

A.    Motion to Suppress

First, Beckles argues that his conviction must be reversed because the incriminating post-arrest statements he made to Special Agent Jefferson should have been suppressed. In as much as a ruling on a motion to suppress is a mixed question of law and fact, we review the district court's findings of fact for clear error and the application of the law to those facts de novo. United States v. Zapata, 180 F.3d 1237, 1240 (11th Cir. 1999). We construe all facts in favor of

9

the prevailing party (here the government). United States v. Bervaldi, 226 F.3d 1256, 1262 (11th Cir. 2000).

Under the Fifth Amendment, "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. In Miranda, the Supreme Court held that the government may not use statements stemming from the custodial interrogation of a criminal defendant unless the government demonstrates that it used procedural safeguards to ensure the privilege against self-incrimination remains intact. 384 U.S. at 444. In particular, a defendant may waive his right against self-incrimination only if he does so "voluntarily, knowingly and intelligently." Id. A defendant's waiver of his Miranda rights is voluntary, knowing and intelligent if "it was the product of a free and deliberate choice rather than intimidation, coercion, or deception," and it was "made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." Moran v. Burbine, 475 U.S. 412, 421 (1986). A written waiver "is usually strong proof of the validity of that waiver, but is not inevitably either necessary or sufficient to establish waiver." North Carolina v. Butler, 441 U.S. 369, 373 (1979).

When the facts are construed in a light most favorable to the government, there can be little question that Beckles made a voluntary, knowing, and intelligent

10

waiver of his <u>Miranda</u> rights. Special Agent Jefferson testified that Beckles: (1) was read his <u>Miranda</u> rights; (2) indicated in writing that he understood his <u>Miranda</u> rights and was aware of the rights that he would give up if he chose to speak; (3) indicated in writing that he was not under the influence of drugs or alcohol; (4) did not appear to be under the influence of drugs or alcohol; (5) indicated in writing that he could understand English; (6) appeared to understand English and spoke with Jefferson in English; and (7) did not request an attorney or indicate that he did not wish to speak with law enforcement officers.

While Beckles did provide contradictory testimony, the district court made a detailed credibility determination in favor of the FBI agent's version of the events, and this decision was not clearly erroneous. <u>See</u> <u>United States v. Delancy</u>, 502 F.3d 1297, 1308 (11th Cir. 2007) (explaining that factual findings are not clearly erroneous where the district court makes detailed credibility determinations that it does not believe a witness's claim at a hearing on a motion to suppress). In particular, the magistrate judge, whose Report and Recommendation was adopted in full by the district court after a <u>de novo</u> review, explained that he chose to credit Special Agent Jefferson's account, and not Beckles's. In short, the district court did not err in denying Beckles's motion to suppress Beckles's incriminating post-arrest statements.

B.     <u>Sufficiency of the Evidence</u>

Beckles also claims that his conviction must be reversed because it was supported by insufficient evidence.  We remain unpersuaded.

We review <u>de novo </u>whether there is sufficient evidence in the record to support a jury's verdict in a criminal trial, viewing the evidence in the light most favorable to the government, and drawing all reasonable factual inferences in favor of the jury's verdict.  <u>United States v. Williams</u>, 144 F.3d 1397, 1401 (11th Cir. 1998).  Accordingly, the evidence will be sufficient to support a conviction if "a reasonable trier of fact could find that the evidence established guilt beyond a reasonable doubt."  <u>United States v. Calhoon</u>, 97 F.3d 518, 523 (11th Cir. 1996).  In rebutting the government's evidence "[i]t is not enough for a defendant to put forth a reasonable hypothesis of innocence, because the issue is not whether a jury reasonably could have acquitted but whether it reasonably could have found guilt beyond a reasonable doubt."  <u>United States v. Thompson</u>, 473 F.3d 1137, 1142 (11th Cir. 2006).

To establish a violation of 18 U.S.C. § 922(g)(1), the government must prove three elements: "(1) that the defendant was a convicted felon, (2) that the defendant was in knowing possession of a firearm, and (3) that the firearm was in or affecting interstate commerce."  <u>United States v. Deleveaux</u>, 205 F.3d 1292,

12

1296-97 (11th Cir. 2000). Beckles contests only the second element -- that he did not knowingly possess a firearm.

"The government need not prove actual possession in order to establish knowing possession; it need only show constructive possession through direct or circumstantial evidence." United States v. Greer, 440 F.3d 1267, 1271 (11th Cir. 2006). "Constructive possession exists when the defendant exercises ownership, dominion, or control over the item or has the power and intent to exercise dominion or control." Id. However, "a defendant's mere presence in the area of [an object] or awareness of its location is not sufficient to establish possession." United States v. Pedro, 999 F.2d 497, 500-01 (11th Cir. 1993) (quotation marks omitted).

Here, the evidence, viewed in the light most favorable to the jury's determination, amply supports the verdict. Among other things, the government established that: (1) Beckles was Jones's boyfriend and lived at her apartment; (2) Beckles helped pay the rent; (3) Beckles's belongings were kept at the apartment, including his clothing, his toothbrush, his watch, and his identification; (4) the Browning shotgun was recovered in Jones's apartment; (5) Beckles knew where the shotgun was concealed and told Detective Castro its exact location; (6) Beckles apologized to Jones for bringing the shotgun into the apartment; (7) the

13

shotgun did not belong to Jones or any of the other occupants or guests at the apartment; and (8) Beckles said that he possessed the shotgun, and that he stole it to protect himself while dealing drugs. Thus, there was ample evidence to support the jury's finding that Beckles knowingly possessed the firearm. Indeed, most strikingly, Beckles admitted to Special Agent Jefferson that he had ownership and control over the shotgun and this testimony went uncontradicted at trial.

C.      Application of § 4B1.1 of the Sentencing Guidelines

Beckles also says that his sentence must be reversed because, contrary to the finding of the district court, his conviction under 18 U.S.C. § 922(g) was not a "crime of violence" under § 4B1.1 of the Sentencing Guidelines. In particular, he claims that the district court erred by looking behind the face of his 18 U.S.C. § 922(g) conviction to make a finding that Beckles possessed a sawed-off shotgun within the meaning of 26 U.S.C. § 5845(a) and by increasing the Sentencing Guidelines calculation accordingly.

Due to multiple prior felonies, Beckles's violation of 18 U.S.C. § 922(g) subjected him to the enhanced penalty provision of 18 U.S.C. § 924(e)(1) and the district court found him to be an armed career criminal pursuant to that statute. This finding, in turn, qualified Beckles for a sentence enhancement under § 4B1.4. That provision of the Sentencing Guidelines instructs that the appropriate offense

14

level is the greater of: (1) the applicable offense level from Chapters 2 and 3 of the

Sentencing Guidelines; (2) the offense level described in § 4B1.1, if applicable;

(3) level 34, if the firearm possessed was of a type described in 26 U.S.C. §

5845(a); or (4) level 33.  U.S.S.G. § 4B1.4(b).

Section 4B1.1, in turn, applies if:

(1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

U.S.S.G. § 4B1.1(a).  In particular, the Sentencing Guidelines specify that a

"'[c]rime of violence' does not include the offense of unlawful possession of a

firearm by a felon, unless the possession was of a firearm described in 26 U.S.C. §

5845(a)," and then reiterate that "[u]nlawfully possessing a firearm described in 26

U.S.C. § 5845(a) (e.g., a sawed-off shotgun or sawed-off rifle, silencer, bomb, or

machine gun) is a 'crime of violence.'"  U.S.S.G. § 4B1.2 Application Note 1.[1]

At sentencing, the district court found that § 4B1.1 was applicable and that

it yielded the greatest offense level, reasoning that two of Beckles's prior felony

---

[1] The commentary and application notes of the Sentencing Guidelines are authoritative, unless they are plainly erroneous, inconsistent with the regulation they interpret, or contrary to the Constitution or federal law.  Stinson v. United States, 508 U.S. 36, 45 (1993); United States v. Torrealba, 339 F.3d 1238, 1242 (11th Cir. 2003).

convictions were for qualified controlled substances offenses, and the current 18 U.S.C. § 922(g) conviction was for a "crime of violence" because the firearm Beckles knowingly possessed was a sawed-off shotgun as defined in 26 U.S.C. § 5845(a).

On appeal, Beckles argues that § 4B1.1 does not apply to him because the instant conviction under 18 U.S.C. § 922(g) is not for a "crime of violence." Specifically, he suggests that he was convicted of unlawful possession of a firearm by a felon, not of unlawful possession of a 26 U.S.C. § 5845(a) firearm by a felon.

Despite making six objections to the PSI (including one to the application of § 4B1.1) and five amendments to his sentencing memorandum, Beckles never objected to the PSI's characterization of the firearm as a sawed-off shotgun or to the PSI's or district court's enhancement of his offense level under §4B1.1 because his current conviction was for a felony crime of violence. Accordingly, we review the district court's decision for plain error. See e.g., United States v. Raad, 406 F.3d 1322, 1323 (11th Cir. 2005). To demonstrate plain error, Beckles has the burden of establishing that "(1) there is an error; (2) that is plain or obvious; (3) affecting [his] substantial rights in that it was prejudicial and not harmless; and (4) that seriously affects the fairness, integrity, or public reputation of the judicial proceedings." Id. (quotation marks and citation omitted). We may

16

exercise this review "sparingly and only in those circumstances in which a miscarriage of justice would otherwise result." United States v. Rodriguez, 398 F.3d 1291, 1298 (11th Cir. 2005) (quotation marks and citation omitted). There can be little doubt this is a difficult and daunting hurdle for the appellant to cross, and Beckles has not done so today.

Indeed, Beckles has not established that there is any error, let alone that any such error is plain. To determine whether the instant offense is a "crime of violence" for purposes of enhancing a sentence under § 4B1.1, a district court may look outside of the "offense of conviction" to the conduct surrounding that conviction"if ambiguities in the judgment make the crime of violence determination impossible from the face of the judgment itself." United States v. Spell, 44 F.3d 936, 939-40 (11th Cir. 1995); United States v. Young, 527 F.3d 1274, 1277 (11th Cir. 2008) (same); United States v. Owens, 447 F.3d 1345, 1347 (11th Cir. 2006) (same). Accordingly, we have permitted district courts to find additional facts when the crime for which the defendant was convicted encompasses both conduct that constitutes a crime of violence and conduct that does not constitute a crime of violence.[2] See e.g., United States v. Aguilar-Ortiz,

_____

[2] Although all of the prior cases in our Circuit discussing when a judgment of conviction is ambiguous for purposes of § 4B1.1 address prior convictions, as opposed to the instant conviction, that difference gives us no pause. The law that applies to evaluating prior

17

450 F.3d 1271, 1276 (11th Cir. 2006) (finding prior state judgment of conviction ambiguous because the Court was unable to say as a categorical matter that all convictions under it qualified as a "drug trafficking offense" under § 2L1.2(b)(1)(B)); Spell, 44 F.3d at 939 (holding that a prior state judgment of conviction for burglary was ambiguous because it encompassed some conduct which constituted a crime of violence and some which did not); see also Greer, 440 F.3d at 1273 (noting that the defendant's prior convictions for making terrorist threats under a Georgia statute did "not, without more, prove that he has been convicted of a violent felony for ACCA purposes" because the state statute prohibits both violent and non-violent conduct); see also United States v. Dwyer, 245 F.3d 1168, 1171 (10th Cir. 2001) ("If the statute is ambiguous, or broad enough to encompass both violent and nonviolent crimes, a court can look beyond the statute to certain records of the prior proceeding.") (quotation marks omitted).

Here, an ambiguity does exist. Plainly, a violation of 18 U.S.C. § 922(g)(1) encompasses both conduct that the Sentencing Guidelines explicitly says is not a crime of violence and conduct that the Sentencing Guidelines explicitly denominates as a crime of violence. All that is required to violate 18 U.S.C. §

---

convictions surely applies with equal force to the evaluation of the instant conviction, particularly because the Sentencing Guidelines contain the same definition of "crime of violence" for both prongs of § 4B1.1(a).

18

922(g) is that a convicted felon knowingly possess any firearm. Thus, this conviction encompasses conduct involving the possession of a standard firearm as well as the possession of a firearm that specifically meets the criteria of 26 U.S.C. § 5845(a). The distinction between these two categories is important, because Congress and the Sentencing Commission have chosen to subject only those who possess 26 U.S.C. § 5845(a) firearms -- which include, among other things, sawed-off shotguns that are less than 26 inches overall in length or have barrels that are less than 18 inches in length -- to longer sentences, since those firearms "are inherently dangerous and when possessed unlawfully serve only violent purposes." U.S.S.G. Appx. C. Amend. 674 (2004).

Where an ambiguity exists and the underlying conviction may be examined, the district court can rely on the "charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented." Aguilar-Ortiz, 450 F.3d at 1276 (quoting Shepard v. United States, 544 U.S. 13, 16 (2005)). For purposes of sentencing, the district court also may base its factual findings on undisputed statements found in the PSI, because they are factual findings to which the defendant has assented. See United States v. Bennett, 472 F.3d 825, 832-34 (11th Cir. 2006).

Facts contained in a PSI are undisputed and deemed to have been admitted

19

unless a party objects to them before the sentencing court "with specificity and clarity." Id. at 832 (concluding that an objection to the probation officer's use of non-Shepard materials in preparation of the PSI did not amount to a dispute of the facts). "It is the law of this circuit that a failure to object to allegations of fact in a PSI admits those facts for sentencing purposes" and "precludes the argument that there was error in them." United States v. Wade, 458 F.3d 1273, 1277 (11th Cir. 2006); Bennett, 472 F.3d at 832 ("A sentencing court's findings of fact may be based on undisputed statements in the PSI. Where a defendant objects to the factual basis of his sentence, the government has the burden of establishing the disputed fact. . . . Otherwise, the objection is waived."). Indeed, the defendant's failure to object to conclusory statements in the PSI renders those statements undisputed and permits the sentencing court to rely upon them without error even if there is an absence of supporting evidence. United States v. Hedges, 175 F.3d 1312, 1315 (11th Cir. 1999).

Beckles's PSI repeatedly stated that the firearm he was convicted of knowingly possessing was a sawed-off shotgun. First, the PSI specified that "Detective Castro then recovered a sawed off Browning shotgun" (PSI ¶ 6), and observed, in making its base offense level calculation, that the offense involved "a semi-automatic firearm that is capable of accepting a large capacity magazine; or .

20

. . [a] firearm that is described in 26 U.S.C. § 5845(a)." (PSI ¶ 12). In explaining the applicable Chapter Four enhancements, the PSI also stated that "[t]he defendant is considered a career offender because he was at least 18 years old at the time of the instant offense, the instant offense is a felony crime of violence (unlawful possession of a sawed-off shotgun) . . . ." (PSI ¶ 18). The district court relied upon these undisputed facts found in the PSI and sentenced Beckles accordingly as a career offender under § 4B1.1. We can discern no error in the district court's reliance on these facts in the PSI to sentence Beckles for possession of a sawed-off shotgun.[3]

But, even if Beckles had demonstrated error and that error was plain or obvious, his argument still could not succeed because he is unable to show that his substantial rights were affected by the error. The third prong of the plain error test "almost always requires that the error must have affected the outcome of the district court proceedings." Rodriguez, 398 F.3d at 1299 (quotation marks and citations omitted). "The standard for showing that is the familiar reasonable probability of a different result formulation, which means a probability sufficient to undermine confidence in the outcome." Id. (quotation marks and citations

---

[3] We note in passing that Beckles has not objected to the district court's finding that at least two of his prior state convictions were for controlled substance offenses that meet the requirements of §4B1.1.

21

omitted). Thus, "[i]t is the defendant rather than the Government who bears the burden of persuasion with respect to prejudice." United States v. Olano, 507 U.S. 725, 734 (1993). In that vein,

> if it is equally plausible that the error worked in favor of the defense, the defendant loses; if the effect of the error is uncertain so that we do not know which, if either, side it helped the defendant loses. Where errors could have cut either way and uncertainty exists, the burden is the decisive factor in the third prong of the plain error test, and the burden is on the defendant.

Rodriguez, 398 F.3d at 1300.

Simply put, on the record before us, the effect of the alleged error is uncertain; therefore, Beckles would lose even if he could show obvious error. No evidence has been adduced regarding the length and size of the shotgun possessed by Beckles, and Beckles has submitted nothing showing that the firearm was not, in fact, a sawed-off shotgun under 26 U.S.C. § 5845(a). Indeed, his attorney said at oral argument that she was unaware of the actual length of the firearm, and that it had been destroyed by the United States Marshals Service pursuant to an unopposed forfeiture order issued on December 21, 2007. Because we do not know whether the firearm Beckles possessed would have qualified Beckles as a career offender, we could do nothing other than speculate. Where such speculation is required to resolve the dispute, the appellant has not met and

cannot meet "his burden of showing a reasonable probability that the result would have been different but for the error; he has not met his burden of showing prejudice; he has not met his burden of showing that his substantial rights have been affected." Rodriguez, 398 F.3d at 1301.

D.    Reasonableness

Beckles also claims that his sentence should be reversed because it is an unreasonable one.   Reviewing a sentence for reasonableness "merely asks whether the trial court abused its discretion." United States v. Pugh, 515 F.3d 1179, 1189 (11th Cir. 2008) (quoting Rita v. United States, 127 S. Ct. 2456, 2465 (2007)).  Our reasonableness review consists of two steps. Id. at 1190.  First, we must

> ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence -- including an explanation for any deviation from the Guidelines range.

Id. (quoting Gall v. United States, 128 S. Ct. 586, 597 (2007).[4]  If the district court

---

[4]  The § 3553(a) factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense; (3) the need for the sentence imposed to afford adequate deterrence; (4) the need to protect the public; (5) the need to provide the defendant with educational or vocational training or medical care; (6) the kinds of sentences available; (7) the Sentencing Guidelines range; (8) the pertinent policy statements of the Sentencing Commission; (9) the need to avoid unwanted sentencing disparities; and (10) the need to provide restitution to victims.  18

23

did not procedurally err, then we must consider the "substantive reasonableness of the sentence imposed under an abuse-of-discretion standard," based on the "totality of the circumstances." Id. (quoting Gall, 128 S. Ct. at 597). "The party who challenges the sentence bears the burden of establishing that the sentence is unreasonable in the light of both th[e] record and the factors in section 3553(a)." United States v. Thomas, 446 F.3d 1348, 1351 (11th Cir. 2006) (quotation marks omitted).

Beckles says his sentence is unreasonable because the district court failed to adequately consider the § 3553(a) factors and mitigating factors such as his troubled childhood, drug addiction, and ill child. But, at sentencing, the district court explicitly stated that it had "given careful consideration to" the factors found in 18 U.S.C. § 3553(a), that Beckles had committed a serious offense, and that there was a need to provide deterrence and safeguard the community from him. The record thus reflects the district court's adequate consideration of the § 3553(a) factors. In fact, "the district court need only acknowledge that it considered the § 3553(a) factors, and need not discuss each of these factors in either the sentencing hearing or in the sentencing order." United States v. Amedeo, 487 F.3d 823, 833 (11th Cir. 2007) (quotation marks and punctuation omitted); United States v.

_____

U.S.C. § 3553(a).

Talley, 431 F.3d 784, 786 (11th Cir. 2005) (stating that "an acknowledgment by the district court that it has considered the defendant's arguments and the factors in section 3553(a) is sufficient under Booker"). Accordingly, Beckles's sentence cannot be reversed on this ground.

E.     Imposition of 18 U.S.C. § 924(e) sentence

Finally, Beckles argues that the district court violated the Fifth and Sixth Amendments to the United States Constitution when it applied 18 U.S.C. § 924(e), because the application of that provision -- which instructs that district courts must impose a mandatory minimum sentence of 15 years upon anyone convicted of violating 18 U.S.C. § 922(g) who also has three previous violent felony or serious drug offense convictions committed on different occasions -- was based upon facts about Beckles's prior convictions that were not found by the jury or charged in the indictment.

The Supreme Court has rejected Beckles's argument. In Almendarez-Torres v. United States, 523 U.S. 224, 247 (1998), the Court held that the government need not prove beyond a reasonable doubt that a defendant had prior convictions or allege those prior convictions in the indictment in order to use those convictions to enhance a defendant's sentence. This Court has confirmed repeatedly that Almendarez-Torres is good law and that "a district court does not err by relying on

25

prior convictions to enhance a defendant's sentence." United States v. Shelton, 400 F.3d 1325, 1329 (11th Cir. 2005); see United States v. Dowd, 451 F.3d 1244, 1253 (11th Cir. 2006) (explaining that "we are bound by Almendarez-Torres until it is explicitly overruled by the Supreme Court"); Greer, 440 F.3d at 1273-76 (expressly rejecting the argument that a judge is forbidden by Booker and Apprendi from determining the factual nature of the prior conviction in vacating the district court's refusal to impose the 18 U.S.C. § 924(e) mandatory minimum sentence because the jury did not determine whether the defendant's three prior convictions were for violent felonies).

Accordingly, we AFFIRM the conviction and sentence in all respects.

**AFFIRMED.**