[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 09-15022
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 16, 2011
JOHN LEY
CLERK

D. C. Docket No. 09-00009-CR-JRH-3

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

NATHAN SMITH,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Georgia

_____

(March 16, 2011)

Before EDMONDSON, PRYOR and KRAVITCH, Circuit Judges.

PER CURIAM:

Nathan Smith appeals his convictions and the sentences imposed for bank

robbery and interstate transportation of a stolen motor vehicle. After a review of the record, we affirm.

On March 3, 2009, Smith entered a bank in Dublin, Georgia, handed the teller a note demanding money, and warned the teller that he had a gun. The teller handed him two bundles of bills totaling $2,380 and Smith fled the bank. Witnesses reported that Smith ran to the rear parking lot after which they saw a gold van with Florida plates speeding away. The bank manager called 911 and the teller gave a description of Smith to police. The witnesses also described the van to police. That afternoon, a police patrol saw a gold van on the interstate with a driver matching Smith's description and conducted a stop. A search of the van revealed the bundled money. Police also determined that the gold van had been reported stolen from a dealership a month earlier.

Smith was indicted for bank robbery, in violation of 18 U.S.C. § 2113(a), and interstate transportation of a stolen vehicle, in violation of 18 U.S.C. § 2313. In May 2009, the court appointed Matthew Waters as Smith's counsel. The trial was scheduled for September 14, 2009.

About three weeks before the trial was set to begin, Smith notified the court by letter that he wanted to remove his court-appointed attorney. A magistrate judge held an *in camera* hearing to address the issue and informed Smith of the

2

risks of proceeding *pro se*. Smith stated that he wished to proceed *pro se* because, although Waters was a competent attorney, Waters had expressed no confidence in the case and Smith did not want the jury to notice this lack of confidence. Smith denied that he was seeking *pro se* status so that he could raise the representation issue on appeal. After Smith confirmed that he was waiving his right to representation freely and voluntarily, the magistrate judge relieved Waters from representing Smith but instructed him to act as stand-by counsel.

At a pre-trial hearing, the district court reiterated the warnings against self-representation and advised Smith that he could hire his own attorney, accept court-appointed representation, or represent himself. Smith elected to represent himself and informed the court that he was aware of the risks. After the district court questioned Smith about his decision, it concluded that Smith had knowingly, freely, and voluntarily waived his right to counsel.

Jury selection began on September 14 and the trial began on September 23. The jury convicted Smith of both counts. Smith filed a motion for a new trial, arguing that the court violated the Speedy Trial Act by conducting trial less than thirty days after he elected to proceed *pro se*. He also requested court-appointed counsel for his post-trial motions. The court appointed counsel but denied the Speedy Trial Act claim, finding that the time period began to run when Smith first

3

appeared more than four months before trial.

One month later, Smith moved to terminate appointed counsel's representation, alleging that his appointed attorney, Henry Crane, had misled him and refused to discuss the case. At a hearing before the same magistrate judge, Smith requested that he be allowed to proceed *pro se* at sentencing and on appeal. The magistrate judge again warned Smith about this decision before relieving Crane from the representation.

According to the presentence investigation report (PSI), Smith qualified as a career offender under U.S.S.G. § 4B1.1 because he had two prior convictions for crimes of violence. Specifically, the probation officer cited a conviction for aggravated assault on a law enforcement officer and a conviction for terroristic threats. The records showed that Smith's aggravated-assault charge resulted from a fight with officers in which Smith punched an officer with a closed fist. Smith's terroristic-threats charge involved a domestic dispute in which Smith entered a woman's home through the window and began choking and hitting her until she stabbed him with a knife in self-defense. Smith's classification as a career offender resulted in a sentencing range of 210 to 262 months' imprisonment. The statutory maximum sentence for bank robbery, however, was twenty years' imprisonment.

4

Crane filed two objections to the PSI, which he later withdrew. Smith moved for additional time to research sentencing issues, but the court denied the motion because Smith had been represented by counsel when the probation officer issued the PSI, had signed the objections Crane submitted, and had waived the right to file additional objections outside the applicable time period.

At sentencing, the government requested a sentence at the statutory maximum, noting Smith's lengthy criminal history. After considering the guideline range and the sentencing factors in 18 U.S.C. § 3553(a), the court sentenced Smith to 240 months for bank robbery and a consecutive 22 months for the stolen vehicle, for a total sentence of 262 months' imprisonment. In reaching this sentence, the court specifically noted Smith's violent history, his moving state to state "in an apparent attempt to avoid criminal prosecution," and that he posed a significant danger to the public.

Smith now appeals on the grounds that (1) he did not voluntarily waive his right to counsel at trial and at sentencing; (2) the court violated the Speedy Trial Act when it held his trial less than thirty days after he decided to proceed *pro se*; (3) his prior convictions did not qualify as violent felonies and therefore he was not a career offender; and (4) his sentence was procedurally and substantively unreasonable. We address each in turn.

A. Right to Counsel

Smith first argues that he did not knowingly waive his right to counsel at trial or at sentencing because the magistrate judge unduly focused on the inevitability of Smith's conviction, led him to believe that he had no choice but to represent himself at trial, and rendered the waiver invalid. He further contends that he did not validly waive his right to counsel at sentencing because the magistrate judge overestimated his sentence and did not adequately inform him of sentencing procedures.

Whether a defendant validly waived his right to counsel at his trial or at his sentencing is a mixed question of law and fact, which we review *de novo*. *United States v. Cash*, 47 F.3d 1083, 1088 (11th Cir. 1995); *see also United States v. Evans*, 478 F.3d 1332, 1340 (11th Cir. 2007) (regarding waiver of counsel at sentencing). "On direct appeal, the government bears the burden of proving the validity of the waiver." *Cash*, 47 F.3d at 1088.

"A criminal defendant has a constitutional right to represent himself when he knowingly, voluntarily, and intelligently elects to do so." *Evans*, 478 F.3d at 1340 (quotation omitted). The "ideal method" for the district court to ensure that a defendant understands the consequences of waiving the assistance of counsel is

through a pretrial hearing, known as a *Faretta*[1] inquiry, during which the district court informs the defendant of the charges, basic trial procedures, possible punishments, and hazards of self-representation. *United States v. Kimball*, 291 F.3d 726, 730 (11th Cir. 2002). "A defendant need only be made aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open." *Id.* (quotation omitted). "The closer to trial an accused's waiver of the right to counsel is, the more rigorous, searching and formal the questioning of the trial judge should be." *Id.* at 730 (quotation omitted). But the ultimate test for the validity of the waiver is the defendant's understanding, not the court's advice. *Cash*, 47 F.3d 1088.

To determine if a waiver was valid, we must look to "the particular facts and circumstances" of the case. *United States v. Garey*, 540 F.3d 1253, 1266 (11th Cir. 2008) (quotation omitted). The following factors inform this determination:

> 1) the defendant's age, health, and education; 2) the defendant's contact with lawyers prior to trial; 3) the defendant's knowledge of the nature of the charges and possible defenses and penalties; 4) the defendant's understanding of the rules of evidence, procedure and courtroom decorum; 5) the defendant's experience in criminal trials; 6) whether standby counsel was appointed and, if so, the extent to which standby counsel aided in the trial; 7) any mistreatment or coercion of the defendant; and 8) whether the defendant was

---

[1] *Faretta v. California*, 422 U.S. 806, 835 (1975).

7

attempting to manipulate the trial.

*Kimball*, 291 F.3d at 730-31.

An indigent defendant does not have an unqualified constitutional right to counsel of his choice. *Garey*, 540 F.3d at 1263. We have held that

> [w]hen a defendant rejects his court-appointed counsel or otherwise engages in behavior that creates tension between his right to counsel and his right to self-representation, a district court does not compromise the defendant's free choice by presenting him with accurate information regarding his lawful choices and asking him to choose between them. And, when an indigent defendant rejects competent, conflict-free counsel, he may waive his right to counsel . . . so long as his decision is made with knowledge of his options and the consequences of his choice.

*Id.* at 1265-66.

Here, we conclude that Smith was given proper *Faretta* warnings and sufficient information both before trial and before sentencing so that he could make a knowing, voluntary, and intelligent waiver of counsel. The record reveals that the magistrate judge questioned Smith about his education, emphasized counsel's competency, explained Smith's choices, warned Smith of the risks of proceeding *pro se*, and considered the *Kimball* factors. The magistrate judge also noted Smith's lengthy criminal history and familiarity with the legal system. Moreover, the district court conducted a similar inquiry and confirmed that Smith's desire to proceed *pro se* was knowing and voluntary.

8

The same magistrate judge considered Smith's motion to proceed *pro se* at sentencing and again considered the *Kimball* factors and gave the necessary warnings. Smith repeatedly stated that he understood the risks and was electing to proceed *pro se* knowingly and voluntarily. Thus, the record shows that the court made an appropriate *Faretta* finding that Smith had entered a valid waiver on each occasion. Accordingly, we affirm as to this issue.

B. Speedy Trial Act

Smith next argues that the district court violated the Speedy Trial Act, 18 U.S.C. § 3161(c)(2), because his trial commenced less than 30 days from the date that he decided to proceed *pro se,* even though he had the assistance of appointed counsel for several months before his *pro se* election.

We review questions of statutory interpretation *de novo*. *United States v. Segarra*, 582 F.3d 1269, 1271 (11th Cir. 2009), *cert. denied*, (U.S. Nov. 29, 2010) (No. 09-8536). The Speedy Trial Act provides in relevant part: "Unless the defendant consents in writing to the contrary, the trial shall not commence less than thirty days from the date on which the defendant first appears through counsel or expressly waives counsel and elects to proceed pro se." 18 U.S.C. § 3161(c)(2).

We have not addressed the precise issue raised by Smith—whether the thirty-day period in § 3161(c)(2) begins to run anew when a counseled defendant

9

subsequently decides to terminate that representation and proceed *pro se.* But we find our decision in *United States v. Darby*, 744 F.2d 1508, 1519 (11th Cir. 1984), instructive. In that case, we addressed the situation in which a defendant who was represented by one attorney at the arraignment was then represented by a different attorney at the trial that began less than 30 days from the date the second attorney was appointed. Holding that the statute did not specify the type of counsel to appear, we concluded that the statutory period began to run when the defendant first appeared through counsel at his arraignment. *Id.* at 1520-21. We noted,

> to the extent that the interpretation urged by [the defendant] would enable defendants to postpone their prosecutions by simply changing lawyers or by retaining lawyers only for limited purposes prior to trial, it would contravene the major purpose of the Speedy Trial Act, *i.e.*, avoiding unnecessary delay.

*Id.* at 1520 n.5.

Other circuits have concluded that the time begins to run when the defendant first appears through counsel because, to "interpret the statute otherwise would enable a defendant to postpone his prosecution by deciding on the eve[ ] of trial that he wants to dismiss his attorney and represent himself." *United States v. Moya-Gomez*, 860 F.2d 706, 741-42 (7th Cir. 1988) ("[w]hen the defendant first appears through counsel, his later decision to proceed *pro se* should not trigger anew the thirty-day preparation period."); *see also United States v. Williams*, 10

10

F.3d 1070, 1079 (4th Cir. 1993) (following *Moya-Gomez*).

The purpose of the Speedy Trial Act would be contravened by allowing defendants to terminate their counsel voluntarily and thereby postpone their trials. We therefore agree with the Fourth and Seventh Circuits and conclude that the thirty-day period was not triggered anew when Smith elected to proceed *pro se*. In this case, Smith's trial took place more than four months after his first appearance through counsel. Accordingly, we affirm on this issue.[2]

C. Career-Offender Status

Smith asserts that neither of the prior convictions that were used to qualify him as a career offender were crimes of violence under the Sentencing Guidelines because, as defined by state statute, these convictions could be predicated on a *mens rea* of recklessness.

We review *de novo* a district court's decision to classify a defendant as a career offender under U.S.S.G. § 4B1.1. *United States v. Gibson*, 434 F.3d 1234, 1243 (11th Cir. 2006). Arguments raised for the first time on appeal are subject to plain error review, which requires the defendant show "(1) there is error; (2) that is

---

[2] Even if we were to conclude that there was a Speedy Trial Act violation, Smith would have to show prejudice to be entitled to relief. *United States v. Edwards*, 211 F.3d 1355, 1358 (11th Cir. 2000). A review of the record here reveals that Smith had ample time to prepare for his defense, as Smith first appeared through counsel more then four months before the trial started. Given the evidence against Smith, Smith has not shown prejudice.

plain or obvious; (3) affecting his substantial rights in that is was prejudicial and not harmless; and (4) that affects the fairness, integrity, or public reputation of the judicial proceedings." *United States v. Beckles*, 565 F.3d 832, 842 (11th Cir. 2009). In this case, although Smith challenged his prior convictions, he did not do so on factual grounds. Therefore, we review his argument for plain error.

A defendant qualifies as a career offender under the Guidelines if, among other things, he "has at least two prior felony convictions of . . . a crime of violence . . . ." U.S.S.G. § 4B1.1(a). A "crime of violence" is defined as:

> any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that – (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

U.S.S.G. § 4B1.2(a). In determining a crime of violence, "the offense of conviction (*i.e.*, the conduct of which the defendant was convicted) is the focus of inquiry." U.S.S.G. § 4B1.2, comment. (n.2). When determining whether a conviction can be classified as a crime of violence, "[w]here an ambiguity exists and the underlying conviction may be examined, the district court can rely on the 'charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented.'" *Beckles*, 565 F.3d at 843 (quoting *Shepard v. United States*, 544 U.S. 13, 16

12

(2005)).  In *Beckles,* this court held,

> For purposes of sentencing, the district court also may base its factual findings on undisputed statements found in the PSI, because they are factual findings to which the defendant has assented. . . . Facts contained in a PSI are undisputed and deemed to have been admitted unless a party objects to them before the sentencing court with specificity and clarity. . . .  Indeed, the defendant's failure to object to conclusory statements in the PSI renders those statements undisputed and permits the sentencing court to rely upon them without error even if there is an absence of supporting evidence.

*Beckles*, 565 F.3d at 843-44 (quotations and citations omitted).

Based on the undisputed facts of Smith's prior convictions contained in the PSI, we conclude that he was convicted of two prior crimes that involved physical force.  His prior convictions for aggravated assault and terroristic threats were thus crimes of violence as defined in the Sentencing Guidelines and Smith was correctly sentenced as a career offender.

D. Reasonableness

Finally, Smith argues that his total sentence was procedurally and substantively unreasonable.

We review a sentence imposed by a district court for reasonableness, using an abuse-of-discretion standard.  *United States v. Livesay*, 587 F.3d 1274, 1278 (11th Cir. 2009).  We utilize a two-part process:  First, the district court must consult and correctly calculate the sentencing range recommended by the

13

Guidelines. Second, the district court must fashion a reasonable sentence by considering the factors enumerated in 18 U.S.C. § 3553(a). *United States v. McBride*, 511 F.3d 1293, 1297 (11th Cir.2007).

When reviewing for procedural reasonableness, we ensure that the district court (1) properly calculated the Guidelines range, (2) treated the Guidelines as advisory, (3) considered the § 3553(a) factors, (4) did not select a sentence based on clearly erroneous facts, and (5) adequately explained the chosen sentence. *Gall v. United States*, 552 U.S. 38, 51 (2007). Moreover, 18 U.S.C. § 3553(c) requires the district court to state its reasons for the sentence in open court. 18 U.S.C. § 3553(c)(1). In complying with § 3553(c), "[t]he sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority." *Rita v. United States*, 551 U.S. 338, 356 (2007). The district court is not required to discuss each of the § 3553(a) factors or mention on record that it has explicitly considered each factor. *United States v. Scott*, 426 F.3d 1324, 1329 (11th Cir. 2005).

After we determine that the district court's sentencing decision is procedurally sound, we then review the substantive reasonableness of the sentence for an abuse of discretion. *Gall*, 552 U.S. at 51. "[T]here is a range of reasonable

14

sentences from which the district court may choose." *United States v. Talley*, 431

F.3d 784, 788 (11th Cir. 2005).  We consider the final sentence in its entirety in

light of the § 3553(a) factors.  *United States v. Thomas*, 446 F.3d 1348, 1351 (11th

Cir. 2006).  The district court is "permitted to attach great weight to one factor over

others."  *United States v. Shaw*, 560 F.3d 1230, 1237 (11th Cir. 2009) (quotation

omitted).  In arriving at a reasonable sentence, the district court shall impose a

sentence that is "sufficient, but not greater than necessary," to comply with the

need for the sentence imposed:

> (A) to reflect the seriousness of the offense, to promote respect for the
> law, and to provide just punishment for the offense; (B) to afford
> adequate deterrence to criminal conduct; (C) to protect the public
> from further crimes of the defendant; and (D) to provide the defendant
> with needed educational or vocational training, medical care, or other
> correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2). Other factors that the sentencing court should consider are

the following: (1) the nature and circumstances of the offense and the history and

characteristics of the defendant; (2) the kinds of sentences available; (3) the

Sentencing Guidelines range; (4) pertinent policy statements of the Sentencing

Commission; (5) the need to avoid unwanted sentencing disparities among

similarly situated defendants; and (6) the need to provide restitution to victims.

*Talley*, 431 F.3d at 786 (citing 18 U.S.C. § 3553(a)).  The burden of establishing

that the sentence is unreasonable, considering both the record and the § 3553(a)

15

factors, is on the party challenging the sentence. *Talley,* 431 F.3d at 788.

In this case, we conclude that Smith's total sentence was procedurally reasonable. The district court correctly determined the guidelines range, as discussed above, considered the parties' arguments and the § 3553(a) factors, and explained its reasons for imposing the sentence.

The sentence was also substantively reasonable. The court noted Smith's lengthy criminal history and the danger he posed to society. Smith has offered nothing to show that the sentence was greater than necessary to meet the § 3553(a) factors.

For the foregoing reasons, we affirm Smith's convictions and sentences.

**AFFIRMED.**