[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-10491
Non-Argument Calendar
_____

D.C. Docket No. 1:14-cr-20221-PAS-2


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JUAN ALEJANDRO RODRIGUEZ CUYA,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(February 2, 2018)

Before WILSON, WILLIAM PRYOR and JORDAN, Circuit Judges.

PER CURIAM:

Juan Alejandro Rodriguez Cuya appeals his convictions and sentence for one count of conspiring to commit mail and wire fraud, 18 U.S.C. § 1349, nine counts of mail fraud, *id.* § 1341, fourteen counts of wire fraud, *id.* § 1343, and two counts of attempted extortion, *id.* § 1951(a). Rodriguez Cuya challenges the denial of his motion for a judgment of acquittal, the refusal to give a jury instruction about corporate and personal liability, and the admission of a summary of bank records as evidence at trial. Rodriguez Cuya also challenges the enhancement of his sentence for an amount of loss between $1 and $2.5 million and challenges, for the first time, the enhancement for an offense involving more than 250 victims. We affirm.

Rodriguez Cuya and his mother, Maria Luzula, used their businesses in Peru and Miami, Florida, to defraud Spanish-speaking residents of the United States. Rodriguez Cuya and Luzula obtained customer lists from companies who had sold products to the victims and directed employees in telephone call centers that Rodriguez Cuya operated in Peru to contact the victims and to misrepresent that they were agents in a legal department of a private or government organization who were collecting overdue payments for products the victims purportedly had purchased. Rodriguez Cuya and Luzula supervised the employees who demanded payment for the fabricated orders. After victims agreed to pay bogus "fees" to settle the matters, their calls were routed to Miami where Luzula and her

2

employees processed credit card payments and mailed packages containing the products the victims allegedly had ordered. Investigators examined Luzula's computer system and bank records and discovered that, between October 2012 and January 2014, she and Rodriguez Cuya swindled $2,115,520 from 8,477 victims that, after accounting for refunds, resulted in net proceeds of $1,707,901. Rodriguez Cuya received $828,531 of the proceeds.

At the close of the evidence, Rodriguez Cuya moved for an acquittal on all counts, but on appeal, he contests only his convictions for using the wires to defraud Rene Gonzalez and for attempting to extort money and other property from Luz Padron and Paula Tinoco. We deem abandoned any challenge that Rodriguez Cuya could have raised to the denial of his motion to acquit him of conspiracy, nine counts of mail fraud, and the remaining thirteen counts of wire fraud. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 680 (11th Cir. 2014).

The district court did not err by denying Rodriguez Cuya's motion. Rodriguez Cuya's employees exacted money from Padron, Tinoco, and Gonzalez under the false pretense of satisfying amounts they owed and penalties they purportedly incurred for ordering weight loss products. *See United States v. Bradley*, 644 F.3d 1213, 1238 (11th Cir. 2011) (reciting elements of wire fraud); 18 U.S.C. § 1951(b)(2) (defining extortion). Employees Pia Silva Pilar and Cinthya

Guerrero recounted demanding from victims substantial fees for items they had not ordered or had not received and coercing them to pay part of the fees by threatening that nonpayment would result in a court appearance, being reported to credit bureaus, and incurring fines. *See United States v. Lee*, 427 F.3d 881, 889–91 (11th Cir. 2005). Rodriguez Cuya sent Luzula by email scripts directing employees to demand a fine of $1,700 and orders for employees to exact a payment before victims could dispute the fees. Padron's caller said that he was an attorney, that he had mailed her a summons, and that she needed to appear in court with counsel and pay a fee of $1,700, but he accepted $200 from her in settlement. Tinoco's caller identified himself as an employee of the state legal department, he warned her about being sued, detained, and having her property seized for failing to pay a fine of $1,700, and she resolved the matter by paying $255. The government also introduced the recording of a collection call to Gonzalez, which Rodriguez Cuya argues was inadmissible hearsay, but as the district court explained to the jury, the recording was offered as evidence "that the call[] [was] made and what was stated during the phone call[]" instead of "for the truth of what was stated." *See* Fed. R. Evid. 801(c). Ample evidence supported Rodriguez Cuya's convictions for wire fraud and extortion.

Rodriguez Cuya argues that, under *United States v. Pendergraft*, 297 F.3d 1198 (11th Cir. 2002), his employees' threats of litigation were legally insufficient

4

to support his convictions. In *Pendergraft*, we ruled that a threat of litigation against a county government, even though made in bad faith and supported by false affidavits, was not wrongful within the meaning of the extortion statute. *Id.* at 1205–08. We also held that the mailing of false affidavits with knowledge that the opponent would deny their truth was not intended to deceive or defraud, as required to prove mail fraud. *Id.* at 1208–09.

*Pendergraft* does not apply. Rodriguez Cuya's threats of bogus lawsuits, detentions, and seizures of property were plainly wrongful and extortionate. And his threats of litigation were intended to and did deceive his victims. *Pendergraft* grants no immunity to those who make threats of these kinds "clothed in legalese." *Lee*, 427 F.3d at 891.

The district court did not abuse its discretion when it refused to give Rodriguez Cuya's proposed jury instruction. A "refusal to give an instruction only [constitutes reversible error] if: (1) the requested instruction was a correct statement of the law, (2) its subject matter was not substantially covered by other instructions, and (3) its subject matter dealt with an issue in the trial court that was so important that failure to give it seriously impaired the defendant's ability to defend himself." *United States v. Hill*, 643 F.3d 807, 850 (11th Cir. 2011) (quoting *United States v. Jordan*, 582 F.3d 1239, 1247–48 (11th Cir. 2009)). Rodriguez Cuya proposed to instruct the jury that "[p]articipation by a business entity in a

5

scheme to defraud in no way necessitate that the officers or owners were participants in the scheme," but the evidence involved Rodriguez Cuya's conduct, not that of the entities he controlled. And the statement in his proposed instruction that "[t]he government [had to] prove beyond a reasonable doubt each element of the charge against [him] personally" incorrectly suggested that Rodriguez Cuya could not be liable for his coconspirators' conduct.

The district court substantially covered Rodriguez Cuya's theory about individual liability. *See id.* The district court instructed the jury that "merely being present at the scene of an event or merely associating with" participants was not enough to find Rodriguez Cuya guilty of conspiracy and that he had to "kn[o]w the unlawful purpose of [its] plan and willfully join[] in it." With respect to mail and wire fraud, the district court instructed the jury that Rodriguez Cuya had to have "knowingly devised or participated in [the] scheme to defraud," to have "intended to defraud someone," and to have "mail[ed] or . . . caus[ed] to be mailed something" and "transmitted or caused to be transmitted by wire some communication in interstate commerce" that "help[ed] carry out the scheme to defraud." The district court also instructed the jury that, if Rodriguez Cuya "did not personally participate" in the mail and wire fraud, he was not guilty of those offenses unless he "was a knowing and willful member of the conspiracy when the crime was committed" and "[i]t was reasonably foreseeable that a coconspirator

would commit the crime as a consequence of the conspiracy." The jury could discern from these instructions that Rodriguez Cuya could not be guilty based only on his ownership of the business in Peru and its misconduct. And the failure to give his proposed jury instruction could not have "seriously impaired [his] ability to defend himself." *See Hill*, 643 F.3d at 850.

The district court also did not abuse its discretion when it admitted into evidence a summary of the bank records of the entities that Rodriguez Cuya and his mother owned. A party "may use a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court." Fed. R. Evid. 1006. The summary prepared by Robert Passero, an analyst associated with the United Postal Inspection Service, compiled the numerous credit card payments deposited between October 2012 and January 2014 into business accounts that Luzula had opened at Bank of America and at JP Morgan Chase and wire transfers from those accounts to Rodriguez Cuya's business accounts in Peru. Rodriguez Cuya argues that the summary was irrelevant, *see* Fed. R. Evid. 402, and unduly prejudicial, *see* Fed. R. Evid. 403, because there was no "evidence linking even a dollar of the deposited funds to any fraudulent activity," but we disagree. Because Rodriguez Cuya's collection center ended its legitimate marketing activities in 2012, the victims paid by credit card, and Luzula divided the proceeds equally with Rodriguez Cuya, a reasonable jury

7

could have found that the money Luzula received and that she transferred to Rodriguez Cuya was connected to their scheme to defraud. It was not an abuse of discretion to admit the summary to prove the content of voluminous bank records.

The district court did not clearly err in calculating the amount of loss attributable to Rodriguez Cuya. A defendant is subject to a 16-level increase of his base offense level when his offense results in an actual or intended loss between $1 and $2.5 million. United States Sentencing Guidelines Manual § 2B1.1(b)(1)(I) & cmt. n.3(A) (Nov. 2014). And the government provided reliable and specific evidence that Rodriguez Cuya's fraud resulted in a loss of more than $1 million. *See Bradley*, 644 F.3d at 1290. Luke Shoemaker, a paralegal with the Department of Justice, provided a declaration that 88 to 94 percent of the victims "paid money in response to threatening calls." Shoemaker screened recordings of the calls, and he identified 162,000 telephone calls involving conversations lasting at least one minute and a smaller subset of calls in which the victims were threatened. Shoemaker used a random number formula to select 63 of the 8,477 victims who paid the Miami office, excluded six victims who did not pay between October 2012 and January 2014 or whose conversation he could not locate, and listened to the corresponding calls to verify that 53 of the remaining 56 victims paid under threat of incurring penalties or a lawsuit. The district court made a reasonable estimate that Rodriguez Cuya obtained 88 percent of the total proceeds of the

8

scheme to defraud, or about $1.8 million, through fraud and intimidation. *See United States v. Barrington*, 648 F.3d 1178, 1197 (11th Cir. 2011).

Rodriguez Cuya failed to object to the calculation of the number of victims of his fraudulent scheme, so we review that ruling for plain error. *See United States v. Rodriguez*, 751 F.3d 1244, 1257 (11th Cir. 2014). A defendant is subject to the addition of 6 levels to his base offense level if his offense involves more than 250 victims. *See* U.S.S.G. § 2B1.1(b)(2)(C). Rodriguez Cuya failed to object to, and is deemed to have admitted, the facts in his presentence report that he defrauded 8,477 persons between October 2012 and January 2014. *See United States v. Beckles*, 565 F.3d 832, 844 (11th Cir. 2009). The district court did not err, much less plainly so, by relying on undisputed evidence of the number of Rodriguez Cuya's victims to sentence him for his multiple crimes.

We **AFFIRM** Rodriguez Cuya's convictions and sentence.