[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 17-10081

_____

D.C. Docket No. 1:15-cr-20885-DPG-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

STANLEY MOSCOVA,
ROSNY MULLER,

Defendants-Appellants.

_____

Appeals from the United States District Court
for the Southern District of Florida

_____

(April 12, 2019)

Before MARCUS, BLACK, and WALKER,[*] Circuit Judges.

PER CURIAM:

---

[*] Honorable John Walker, Jr., United States Circuit Judge for the Second Circuit, sitting by designation.

Stanley Moscova and Rosny Muller appeal their jury convictions for conspiracy to defraud the Internal Revenue Service with respect to fraudulent claims for tax refunds, and possession of fifteen or more counterfeit or unauthorized access devices, and Moscova appeals his conviction on three counts of aggravated identity theft.[1]    Moscova and Muller challenge the district court's refusal to grant an instruction on immunized witnesses.  Moscova also challenges the district court's refusal to grant a mistrial and claims that the evidence arrayed against him was insufficient as to all of the counts.  After thorough review, we affirm.

## I.

The essential facts adduced at trial are these.  Detective Kenneth Sealy of the Aventura Police Department began investigating, as a part of an Internal Revenue Service (IRS) task force, an Internet Protocol (IP) address that was flagged as possibly being used to file fraudulent tax returns.  That IP address was assigned to a physical address in Aventura, Florida, and the internet service account was in Wolf Obin's name.  After reviewing the lease for the apartment at that physical address -- which listed Rosny Muller and Stanley Moscova as occupants and Obin as an emergency contact -- Sealy obtained a search warrant for the apartment.  The warrant

---

[1] Moscova and Muller were tried and convicted with another individual, Wolf Obin, who also appealed to this Court. Obin has since dismissed his appeal voluntarily, leaving just the appeals of Moscova and Muller.

was executed on May 10, 2013, at 6:00 a.m., at which time, Moscova and Muller were found in bedroom 1, and Obin was found in bedroom 2.[2]

Vast amounts of personal identifying information (PII) belonging to other individuals were found in the house, along with a large number of prepaid debit cards.  The PII included names, dates of birth, social security numbers, and other information.  In bedroom 1, the names, dates of birth, social security numbers, and phone numbers were found for Virginia Plume, Donald Gill, and Ronald Axford. Moscova's passport, bank account information, and business cards also were found in bedroom 1.

Law enforcement officers found a letter in bedroom 1 from the IRS to an individual named Marie Guirand that contained a preparer tax identification number (PTIN) assigned to her (which is used by tax preparation businesses to file multiple tax returns) and an email address associated with Moscova.  Additional information was discovered, including a sheet of paper showing that an Electronic Filing Identification Number (EFIN) account had been opened under the name of Marie Guirand, a friend of Moscova's and a witness at trial, using her personal information. The password for that EFIN was "Pass_Moscova23."  Agents also reviewed the articles of incorporation for a company called "T.A.M. Tax Services LLC," which listed Guirand as the registered agent and managing member.  Guirand said she gave

---

[2] Two other individuals were found in the apartment but they were never charged.

her fingerprints (which are needed to obtain an EFIN) to Moscova and that Moscova had prepared her taxes in the past. She testified, however, that she did not know what an EFIN was, never knew that her fingerprints would be used for an EFIN, never filed tax returns for any other individuals, and never owned a tax preparer's business.

Personal identifying information belonging to other people and still more prepaid debit cards were also found in bedroom 2, the living room, and the kitchen of the apartment. That bedroom also contained a printout of searches of death records, including information about deceased individuals -- dates of birth, dates of death, and the states where the social security cards of the deceased individuals were issued. PII was also found on Moscova's Blackberry cell phone. A business credit card for a company called "Amazin [sic] Marketing LLC" registered to Moscova's wife was discovered, and Moscova had signature authority on the account. An iPhone was seized during the search, and an "extraction report" was performed on the phone. The iPhone's associated Apple ID was wolfobin@gmail.com. The extraction report showed that the iPhone contained the PII of numerous individuals, as well as pictures containing Marie Guirand's identification information.

Detective Sealy interviewed Moscova and Muller.[3] Moscova initially denied knowing about any illegal activity at his residence, but later admitted to knowing

---

[3] Detective Sealy tried to record these interviews but was not able to do so because of technical problems ascribed to the recording equipment.

that illegal tax returns were being filed from that location. Moscova also admitted to having filed fewer than 20 false tax returns from the apartment himself and applying for an EFIN. Moscova added that because he received only six or seven payouts for small sums of money, he stopped filing the false returns because it was not worth doing so. Muller was also interviewed, and he too admitted to having filed fewer than 50 fraudulent tax returns with the IRS. Muller explained that he was largely unsuccessful and denied generating much money from the scheme. Also found in Muller's bank statements were multiple tax refund deposits from the U.S. Treasury.

Another government witness, Kristy Morgan, testified that the IP address for Moscova and Muller's residence was used to fraudulently file tax returns for Virginia Plume, Donald Gill, and Ronald Axford. At least seven different EFINs were linked to the same IP address and associated with various corporate entity names. Six hundred and twenty-eight tax returns were filed using those EFINs, claiming tax refunds totaling $2,338,528. The IRS actually paid out some $470,670. Bedroom 1 also contained the name, date of birth, social security number, and identification number for a "Max Parkyz" inside a Louis Vuitton bag. Parkyz was listed as the tax preparer of the returns belonging to Plume, Gill, and Axford. Notably, Gill and Axford both died in 2012. Plume is also deceased, and her husband testified at trial. Plume's husband said that Plume did not authorize

5

Moscova to file a tax return on her behalf and neither of them knew anyone named Max Parkyz.

IRS records also established that Lina Marie Cortes Guevara, an acquaintance of Moscova, applied for an EFIN, but she too denied applying for one. Moscova prepared Cortes Guevara's tax returns for her at his business Amazing Marketing in the past and filed them with the IRS. Moscova apparently wanted to open a retail clothing company under Cortes Guevara's name, and although it never opened, Cortes Guevara gave Moscova her fingerprints for that purpose. In fact, her fingerprints were actually used as a part of an EFIN application. Cortes Guevara later received paperwork from the IRS about the EFIN and gave it to Moscova.

Despite the voluminous information seized and the admissions made by Moscova and Muller in 2013, Detective Sealy did not arrest either Moscova or Muller until 2015. In 2016, a federal grand jury sitting in the Southern District of Florida indicted Moscova, Muller, and Obin in multiple counts: all three were charged with conspiracy to defraud the IRS with respect to fraudulent claims for tax refunds, pursuant to 18 U.S.C. § 286 (Count 1), and with possession of 15 or more counterfeit or unauthorized access devices in violation of 18 U.S.C. § 1029(a)(3) (Count 2); Obin was indicted in three counts with aggravated identity theft in violation of 18 U.S.C. § 1028A(a)(1) (Counts 3–5); Moscova and Muller were indicted in three additional counts with aggravated identity theft, also in violation of

18 U.S.C. § 1028A(a)(1), referencing the identities of Virginia Plume, Donald Gill, and Ronald Axford (Counts 6–8), respectively.

The trial lasted five days.  We detail briefly two additional matters relevant to the appeal.  The first one concerns Lina Marie Cortes Guevara, who was called as a witness by the United States.  She testified that, among other things, she was friendly with Moscova and at some point became romantically involved with him.  For our purposes, the key point made during Cortes Guevara's testimony concerned a series of ambiguous assurances given to her by law enforcement officials about whether or not she would be prosecuted.  Cortes Guevara did not initially tell law enforcement officials about her romantic relationship with Moscova and was worried that she might "be in trouble." The following colloquy transpired on cross examination:

> [Defense Counsel]: Prior to you going into the room, were you assured that you would not be prosecuted?
>
> [Cortes Guevara]: Yes.
>
> [Defense Counsel]: Who told you that you would not be prosecuted for anything that you told them?
>
> [Cortes Guevara]: Nobody.
>
> [Defense Counsel]:  Let me ask it another way. Prior to you going into the room, did any of the agents or prosecutors tell you, look, don't worry, we are not looking at you? You're not going to be in trouble?
>
> [Cortes Guevara]: Yes.

7

[Defense Counsel]:  Who told you that?

[Cortes Guevara]: Basically the three of them.

Cortes Guevara explained that these assurances made her more comfortable.

Thereafter, Muller asked the district court to give the jury an instruction about immunized witnesses.  The requested charge was drawn from the 11th Circuit Pattern Jury Instructions.  It reads this way: "You must consider some witnesses' testimony with more caution than others.  For example, paid informants, witnesses who have been promised immunity from prosecution, or witnesses who hope to gain more favorable treatment in their own cases, may have a reason to make a false statement in order to strike a good bargain with the Government.  So while a witness of that kind may be entirely truthful when testifying, you should consider that testimony with more caution than the testimony of other witnesses." 11th Circuit Crim. Pattern Jury Instruction S1.1, Testimony of Accomplice, Informer, or Witness with Immunity (Feb. 2016).

The government asserted, however, that no witness had been given immunity. After reviewing the record, the district court found that Cortes Guevara had not been given any immunity and denied giving the instruction.  The district court explained its ruling this way: "So how does this raise immunity?  The testimony of the witness is clearly that nobody told her that she would not be prosecuted for anything she told them.  Then the question was asked in a rather curious way, 'Did anybody say look,

8

don't worry, we're not looking at you.  You're not going to be in trouble.'  That is not a grant of immunity."

The judge did, however, give the jury a general instruction on witness credibility.  It read: "You should decide whether you believe what each witness had to say and how important that testimony was.  In making that decision, you may believe or disbelieve any witness in whole or in part. . . .  To decide whether you believe any witness, I suggest that you ask yourself a few questions.  Did the witness impress you as one who was telling the truth?  Did the witness have any particular reason not to tell the truth?  Did the witness have a personal interest in the outcome of the case?"

The other key issue at trial arose during the testimony of Marie Guirand, also called by the United States.  During direct examination, the following exchange occurred:

> [Government]: Did there come a time when you let Mr. Moscova use a bank account you had in your name?
>
> [Guirand]: Yes, sir.
>
> [Government]: Tell us what happened then.
>
> [Guirand]: He had deposited money in my account and they closed it because they said there was fraud in it.

Moscova objected on hearsay grounds, and during a side bar claimed that the government had intentionally elicited the testimony regarding fraud, that a curative

9

instruction would not fix the problem, and, therefore, a mistrial should be granted. The district court agreed that a piece of the testimony was objectionable but found that the government did not elicit it intentionally since the question was directed at something different. The court reserved ruling on the application for a mistrial but gave the jury a curative instruction. The court explained to the jury that it was proper to consider Guirand's testimony that "he had deposited money in my account and they closed it," but they must disregard the statement "because they said there was fraud in it." "With respect to this account," the court continued, "there is no evidence that will regard fraud. The government will not present any evidence that this account was a result of fraud in any way shape or fashion. So you're not to consider that in any way. This is very important. This is crucial. So please, ladies and gentlemen, do not consider anything with regard to fraud as it relates to this account." The judge then asked the jury if he had been clear and each of the jurors answered affirmatively.

Later, Moscova renewed his motion for a mistrial based on Guirand's offending statement, arguing that the curative instruction could not "unring the bell." The district court rejected the application, concluding that the instruction it had given cured any problem, and observing that many other bank accounts and EFIN numbers were at issue in the case. All of this counseled against a finding of prejudice so severe as to warrant a mistrial.

10

Moscova rested without presenting any evidence.  Muller briefly examined two government witnesses again.  Moscova was found guilty on all counts.  Muller was also found guilty on Counts 1 and 2 but acquitted on Counts 6, 7, and 8. Thereafter, Moscova was sentenced to a term of 60 months' imprisonment, 3 years of supervised release, and joint and severable responsibility to pay mandatory restitution in the amount of $470,670.  Muller was sentenced to 33 months' imprisonment, 3 years of supervised release, and the same joint and severable obligation to pay $470,670 in mandatory restitution.

This timely appeal followed.

## II.

We begin with the challenge to the district court's refusal to give the jury an immunized witness instruction.  We review this decision only for abuse of discretion. United States v. Jeri, 869 F.3d 1247, 1268 (11th Cir. 2017) (citing United States v. Ndiaye, 434 F.3d 1270, 1280 (11th Cir. 2006)).  "So long as the instructions accurately reflect the law, the trial judge is given wide discretion as to the style and wording employed in the instructions."  United States v. Starke, 62 F.3d 1374, 1380 (11th Cir. 1995); see also United States v. Gibson, 708 F.3d 1256, 1275 (11th Cir. 2013) ("We will not reverse a defendant's conviction based on a challenge to the jury charge unless we are left with a substantial and ineradicable doubt as to whether the jury was properly guided in its deliberations." (quotations omitted)).  "The

11

district court's refusal to incorporate a requested jury instruction will be reversed only if the proffered instruction was substantially correct, the requested instruction was not addressed in charges actually given, and failure to give the instruction seriously impaired the defendant's ability to present an effective defense." United States v. Starrett, 55 F.3d 1525, 1551 (11th Cir. 1995) (quotations omitted).

For starters, there is precious little in the record to suggest that Cortes Guevara was promised immunity by prosecutors. The prosecutor unambiguously denied having offered any immunity to the witness. As for the testimony of Cortes Guevara, she provided three answers on the subject during cross examination, and each undermined or contradicted the other. First, she said that she had been "assured" that she would not be prosecuted. Then, when asked who told her that she would not be prosecuted, she said that "[n]obody" made this promise. Finally, she claimed that one of the prosecutors, along with some of the case agents, told her only that she was not being "look[ed] at," suggesting at most that she was not a subject or maybe a target of their investigation. The first answer suggested that some type of immunity may have been offered orally to Cortes Guevara. Her second response rebutted the first suggestion, and the final comment did not come close to establishing that Cortes Guevara was offered use or transactional immunity.

Not surprisingly, upon reviewing this record, the district court found as a fact that there was no grant of immunity. The trial court explained its findings this way:

12

"The testimony of [Cortes Guevara] is clearly that nobody told her that she would not be prosecuted for anything she told them. Then the question was asked in a rather curious way, 'Did anybody say look, don't worry, we're not looking at you. You're not going to be in trouble.' That is not a grant of immunity." We review the district court's findings for clear error and we can find none. See United States v. Calimano, 576 F.2d 637, 639–40 (5th Cir. 1978)[4] (holding that the district court resolved a factual dispute as to whether there was a promise to dismiss an indictment, and upholding that factual finding because it was not clearly erroneous); United States v. Weiss, 599 F.2d 730, 736 (5th Cir. 1979) ("We do not find that the court's finding of no actual promise not to prosecute [the defendant] on the . . . charges is clearly erroneous." (citing Calimano, 576 F.2d at 639–40)). We can discern no basis to disturb the district court's finding that Cortes Guevara was not promised immunity, let alone clear error.

Moreover, even if we were to assume that the district court clearly erred in its fact-finding mission and the court abused its discretion in rejecting the instruction, Moscova and Muller still have failed to show that the missing instruction seriously impaired their ability to present an effective defense. See Starrett, 55 F.3d at 1551. The district court did not prevent either defendant from using any "assurances" given

---

[4] Fifth Circuit decisions issued prior to October 1, 1981 are binding precedent in the Eleventh Circuit. Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981).

13

to Cortes Guevara to impeach her credibility and the defendants were still perfectly free to attack Cortes Guevara's credibility through cross examination and in closing argument. In fact, Moscova vigorously attacked Cortes Guevara's credibility on cross-examination, and Muller declined to question her. Moscova's attorney highlighted many inconsistencies in the testimony on cross examination, suggested on cross that Cortes Guevara had offered new information to the government only after she had been assured she was not being "look[ed] at," and during closing argument, hammered away at the witness's credibility. Moscova again argued in closing that Cortes Guevara disclosed more information to agents only after being assured that she had nothing to worry about.

Moreover, the evidence against Moscova and Muller was overwhelming, and no instruction would have changed that fact. Moscova and Muller both admitted to filing fraudulent tax returns from their apartment, and substantial additional evidence corroborated their confessions. They were found in possession of thousands of pieces of personal identifying information, fraudulent tax returns were filed from that address, and the evidence strongly suggested that Moscova set up an EFIN account under Marie Guirand's name and applied for an EFIN using Cortes Guevara's fingerprints and information. An immunity instruction could not have erased this mountain of evidence. The refusal to give an instruction on witness immunity was neither erroneous nor did its omission make any difference.

14

## III.

As for Moscova's challenge to the district court's refusal to grant a mistrial on account of Marie Guirand's reference to fraud, we review the district court's decision only for abuse of discretion. E.g., United States v. Lozano-Hernandez, 89 F.3d 785, 789 (11th Cir. 1996). This decision falls soundly within the broad discretion of the trial judge because "he or she is in the best position to evaluate the prejudicial effect of a statement or evidence on the jury." United States v. Delgado, 321 F.3d 1338, 1346–47 (11th Cir. 2003) (quotation omitted) (alteration adopted). "And when a district court gives a curative instruction, the reviewing court will reverse only if the evidence is so highly prejudicial as to be incurable by the trial court's admonition." Id. at 1347 (quotations omitted). "A curative instruction purges the taint of a prejudicial remark because a jury is presumed to follow jury instructions." United States v. Simon, 964 F.2d 1082, 1087 (11th Cir. 1992) (quotation omitted).

Moscova claims entitlement to a mistrial because of Marie Guirand's brief statement that "[Moscova] had deposited money in my account and [the bank] closed it because they said there was fraud in it." Moscova claims that this testimony was so prejudicial as to warrant a mistrial. We remain unpersuaded.

For one thing, the comment was very brief, and unsolicited by the prosecution. Indeed, only one half of one sentence of Guirand's testimony was allegedly

15

prejudicial, and the judge instructed the jury to disregard the offending comment. In the course of a five-day trial, this makes up a tiny piece of the total evidential foundation presented to the jury. Moreover, improper and prejudicial testimony is far less likely to mandate a mistrial when there is other substantial evidence of guilt thereby reducing the likelihood that the offending comment had a substantial impact upon the verdict of the jury. See United States v. Perez, 30 F.3d 1407, 1411 (11th Cir. 1994). In this case, the inculpatory evidence was substantial, further reducing the danger of prejudice.

The curative instruction given by the judge was clear and immediately acknowledged by the jurors. The district court was careful and deliberate, parsing out what parts of the statement the jury should not consider and precisely why that testimony should be disregarded. The district court made clear that there was "no evidence as it relates to fraud in this account," and that the bank account Guirand mentioned was not a part of the government's case. The jurors all affirmatively responded that they understood and would follow the instruction.

## IV.

Finally, we review the sufficiency of the evidence as to Moscova's conviction on all counts. "We review de novo whether sufficient evidence supports a conviction, drawing all reasonable factual inferences from the evidence in favor of the verdict." United States v. Cruickshank, 837 F.3d 1182, 1188 (11th Cir. 2016)

16

(citing United States v. Beckles, 565 F.3d 832, 840 (11th Cir. 2009)).  "Evidence is sufficient if a reasonable trier of fact could have found that it established guilt beyond a reasonable doubt."  Id. (citing Beckles, 565 F.3d at 840).

Title 18 U.S.C. § 286 criminalizes entering into an illegal agreement, combination, or conspiracy to defraud the United States by "obtaining or aiding to obtain the payment or allowance of any false, fictitious or fraudulent claim."  18 U.S.C. § 286.  The statute covers an illegal agreement to submit false or fraudulent claims to government departments or agencies.  See United States v. Gupta, 463 F.3d 1182, 1194 (11th Cir. 2006) (false claims submitted to Medicare); United States v. Suba, 132 F.3d 662, 672–73 (11th Cir. 1998) (same).  To sustain a conspiracy conviction under § 286, the government must prove beyond a reasonable doubt: (1) the existence of an agreement to accomplish a common and unlawful objective; (2) Moscova's knowing and voluntary participation in the conspiracy; and (3) evidence that Moscova, or some other conspirator, committed an overt act in the course of and in furtherance of the charged conspiracy.  United States v. Pierre, 825 F.3d 1183, 1193 (11th Cir. 2016).  Moreover, direct evidence need not be presented in order to establish a conspiracy.  Suba, 132 F.3d at 672 (citing United States v. Khoury, 901 F.2d 948, 962 (11th Cir. 1990)).

The evidence, when taken in a light most favorable to the jury's verdict, overwhelmingly establishes Moscova's guilt.  In the first place, the existence of an

17

unlawful agreement was proven. The fraudulent tax returns were traced back to the IP address for the apartment where Moscova, Muller, and Obin lived, the same apartment that contained vast amounts of PII. It strains credulity to suggest that these individuals -- who lived amongst piles of PII every day -- did not know about the scheme, especially after each admitted to filing false and fraudulent tax returns. Moscova specifically confessed to filing false tax returns with the IRS, as did Muller and Obin. Moscova's confession, along with the others, established that he knowingly and voluntarily participated in the conspiracy. The evidence also established that Moscova applied for an EFIN under his own name, and that Moscova obtained an EFIN under Marie Guirand's name without her knowledge.

The evidence also amply supports Moscova's convictions under 18 U.S.C. § 1029(a)(3). It is illegal to possess 15 or more counterfeit or unauthorized access devices knowingly and with intent to defraud, if the act affects interstate commerce. 18 U.S.C. § 1029(a)(3). Moscova, at the very least, constructively possessed more than 15 unauthorized access devices. "A person constructively possesses an item when he has knowledge of the thing possessed coupled with the ability to maintain control over it or reduce it to his physical possession, even though he does not have actual personal dominion. Constructive possession also occurs when a person exercises ownership, dominion, or control over the contraband itself or dominion or control over the premises or the vehicle in which the contraband is concealed."

18

United States v. Baldwin, 774 F.3d 711, 722 (11th Cir. 2014) (quotations and alteration omitted) (finding constructive possession sufficient to uphold a conviction under 18 U.S.C. § 1029(a)(3) violation). A jury could easily have inferred that Moscova had control over the common areas of the apartment and, more specifically, over bedroom 1. Moscova's name was on the lease of the apartment, and he was found in bedroom 1 during the search. Moreover, personal identifying information was found in bedroom 1, mixed with Moscova's own personal documents including his passport. Moscova had control over the apartment that he rented and the room where he stayed. Still further, incriminating data was found on Moscova's cell phone, a device he plainly controlled.

The evidence also established that Moscova possessed this information with the intent to defraud. Again, he admitted to having filed many false tax returns, and a reasonable jury could readily infer that he intended to use the vast amounts of PII in his residence to defraud the IRS. Furthermore, the information concerning Plume, Gill, and Axford was found in bedroom 1, and fraudulent tax returns were filed in their names. These tax returns were filed by "Max Parkyz," about whom information was found in a bag in bedroom 1. Again, a jury could reasonably infer that Parkyz was Moscova's alias. In short, Moscova's own admission, coupled with the physical evidence found in his apartment, could lead a reasonable jury to find him guilty of violating § 1029(a)(3) beyond a reasonable doubt.

19

There is more than sufficient evidence to sustain Moscova's conviction on the aggravated identity theft charges as well.  It is a federal crime to "knowingly transfer[], possess[], or use[], without lawful authority, a means of identification of another person" in relation to certain felonies, including crimes under 18 U.S.C. § 1029(a)(3).  18 U.S.C. § 1028A(a)(1), (c)(4).  "Means of identification" can include a name, social security number, or date of birth.  Id. § 1028(d)(7).  The government was required to establish that (1) Moscova knowingly transferred, possessed, or used another person's means of identification, (2) without lawful authority, (3) during and in relation to a felony violation of 18 U.S.C. § 1029(a)(3) (Count 2).  See United States v. Zitron, 810 F.3d 1253, 1260 (11th Cir. 2016).

Here, personal information for each of the individual victims named in Counts 6–8 -- Plume, Axford, and Gill -- was found in Moscova's bedroom.  The tax returns for these individuals were filed from the IP address for Moscova's residence.  The names of and information about these victims were found among the death records recovered from his apartment.  The fraudulent returns were all filed by "Max Parkyz," but that appears to merely be a cover used by Moscova.  Parkyz's information, including his name, social security number, and date of birth were all found in Moscova's room as well.  Again, the evidence was more than sufficient to sustain the jury's verdict.

Accordingly, we affirm the convictions of Moscova and Muller.

20

**AFFIRMED.**