**NOT FOR PUBLICATION**

# In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 24-13514

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

JAMES GLOVER,

*Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Middle District of Alabama
D.C. Docket No. 2:23-cr-00058-JIC-JTA-1

_____

Before NEWSOM, GRANT, and MARCUS, Circuit Judges.

PER CURIAM:

James Glover appeals his convictions and 24-month sentence, following his convictions for one count of postal theft by a U.S. Postal Service employee and three counts of mail fraud. On

appeal, Glover argues that: (1) the district court erred in denying his motion for judgment of acquittal based on insufficiency of the evidence; (2) the court erroneously admitted two videos of him opening packages; and (3) at sentencing, the court improperly applied a six-point enhancement under U.S.S.G. § 2B1.1(b)(1)(D) due to an overcalculation of economic loss.  After careful review, we affirm.

## I.

Over many months in 2022 in Montgomery, Alabama, numerous checks from local addresses were removed from the mail, altered or forged, and cashed or deposited at banks.  This affected checks from both Reinhardt Toyota and Jack Ingram Automotive.

At trial, Reinhardt employee Brian Gremaux testified that after several Reinhardt checks were altered and deposited in mid-2022, the dealership developed a plan to expose the scheme.  The plan worked -- Reinhardt issued three checks and put them in the mail on September 16, 2022; the checks were stolen; they were fraudulently altered; and altered versions were published to a bank. In an effort to exclude employee theft, Gremaux "started watching the videos."  Ultimately, the only person to touch the September 16 mail was Glover, a postal carrier whose route included Reinhardt.  From an exterior camera, Glover was seen taking the three envelopes into his mail truck, going through the mail, putting several pieces in his backpack, and stowing the rest behind his seat.

Officer Shawn Brosius of the City of Millbrook testified that, on October 3, 2022, he was dispatched to a fight, where he arrested

Keldric Jones ("Keldric").  After Keldric threw a handgun into his car, Officer Brosius searched the vehicle and found a cache of checks, many from car dealerships, a printer, two laptops, and blank checks inserted into the paper slot of the printer.  Thirty-nine checks were seized in total, including checks belonging to Jack Ingram.  Jillian Vessey, a forensic latent print analyst with the U.S. Postal Service, testified that Jack Ingram check 108261 seized from Keldric contained two partial fingerprints of Glover.

Special Agent Brandon Henderson of the U.S. Postal Service testified that after reviewing Reinhardt's security video depicting Glover putting mail into a backpack, Henderson installed a covert security camera inside Glover's truck.  Glover was captured on video on October 3 inside the truck, holding mail up to bright light to examine its contents three separate times, and at least one piece of mail was addressed to Reinhardt.  Glover set aside and photographed eight checks on October 6 while parked at Reinhardt, and later in December, he opened and examined multiple parcels.  The checks from October 3 and 6, however, were never stolen.

According to Henderson, Glover was friends with Marcus Jones ("Marcus"), a U.S. postal carrier and Keldric's father -- Glover and Marcus were friends on social media and tagged each other in posts.  In addition, a search of Glover's phone messages revealed that he wrote "Rocky iCustoms" in November 2022, "Need to come on back with these slips[.] [T]he holiday season is approaching kemosabe."  A "slip" is a check.  In another message, he sent "Fetti Boi" a picture of Keldric with a lot of cash.  A few days later,

4                          Opinion of the Court                        24-13514

he messaged Fetti Boi, "Marcus . . . going ham with that scheme but my biggest problem is y'all posting that shit like y'all not seeing everybody talking about how them ppl watching the book like hell going to put the Pholks on themselves and swear somebody snitch." He also wrote Fetti Boi, "He wanna give a nigga 1,5. . . 1,8. . . 2,5. . . for about 30 40 bands! This other git willing to give 20% of the total amount." "Bands" are thousands of dollars.

Special Agent Henderson said it was unlikely that a single mailman could steal all 39 checks in Keldric's vehicle because the checks came from multiple postal routes. However, the check with Glover's fingerprint corresponded to a route Glover worked where Jack Ingram was located. Relevant to the theft and mail fraud counts for September 16 (Counts 1 and 3), Henderson testified that another postal worker, Quincy Holley, did not work that day; payroll records, video evidence, and Glover's mail scanning device indicated that Glover worked that day. Relevant to the mail fraud counts for October 3 and 6 (Counts 5 and 6), Henderson properly identified Glover in several videos depicting him examining mail, although Henderson had misidentified Glover in a different blurry photo. GPS data of Glover's route and his mail scanning device corroborated that he was on route at the time of the videos.

Glover testified on his own behalf. He conceded he was in the September 16 Reinhardt video but said the mail in his "book bag" was from his other job as a human resources manager that his supervisor had asked him to deliver to the post office. He claimed he only retrieved one envelope from Reinhardt and the other mail

was already in the backpack.  He also gave innocent explanations for his digital chats and admitted Keldric had offered him money to steal checks on two occasions, but he declined.  As for his fingerprint on the seized check, Glover testified he had smoked marijuana in Keldric's car.  And as for the videos of him inspecting mail and packages, he said people sometimes asked him to throw away their junk mail or to return certain mail to the post office where "we have a process for unclaimed mail or unwanted mail."

The jury found Glover guilty of Count 1 (postal theft by an employee on September 16, 2022), Count 3 (mail fraud on September 16, 2022), Count 5 (mail fraud on October 3, 2022), and Count 6 (mail fraud on October 6, 2022).  He was acquitted on the other counts.  This timely appeal follows.

## II.

We review *de novo* a challenge to the sufficiency of the evidence and the denial of a Federal Rule of Criminal Procedure 29 motion for judgment of acquittal, viewing the evidence in the light most favorable to the government and making all reasonable inferences and credibility choices in support of the jury's verdict. *United States v. Gamory*, 635 F.3d 480, 497 (11th Cir. 2011).  Ordinarily, we review a district court's evidentiary rulings, including the admissibility of evidence under Federal Rule of Evidence 404(b), for abuse of discretion. *United States v. Brown*, 665 F.3d 1239, 1247 (11th Cir. 2011).  When a defendant objects to Rule 404(b) evidence through a pretrial motion *in limine* but does not renew his objection when the evidence is presented at trial, he does not preserve the objection

6                       Opinion of the Court                24-13514

for appeal and our review is for plain error. *Id.* To establish plain error, a defendant must show (1) an error, (2) that is plain, and (3) that affects substantial rights. *Id.* at 1247 n.3. If all three conditions are met, we may recognize an error only if it seriously affects the fairness, integrity or public reputation of judicial proceedings. *Id.*

We review a district court's loss determination for clear error. *United States v. Woodard*, 459 F.3d 1078, 1087 (11th Cir. 2006). "For a factual finding to be 'clearly erroneous,' [we], 'after reviewing all of the evidence, must be left with a definite and firm conviction that a mistake has been committed.'" *United States v. Rodriguez-Lopez*, 363 F.3d 1134, 1137 (11th Cir. 2004).

### III.

First, we are unpersuaded by Glover's claim that the court erred in denying his motion for judgment of acquittal. We will uphold the denial of a motion for judgment of acquittal if a reasonable trier of fact could determine that the evidence presented establishes the defendant's guilt beyond a reasonable doubt. *Gamory*, 635 F.3d at 497. "The evidence need not be inconsistent with every reasonable hypothesis other than guilt, and we allow the jury to choose among several reasonable conclusions to be drawn from the evidence." *United States v. Hunt*, 526 F.3d 739, 745 (11th Cir. 2008).

The test for sufficiency is the same, no matter if the evidence is direct or circumstantial, but where the government relied on circumstantial evidence, reasonable inferences, not mere speculation, must support the conviction. *United States v. Martin*, 803 F.3d 581, 587–88 (11th Cir. 2015). We assume that the jury resolved all

questions of credibility in a manner supporting the verdict. *United States v. Jiminez*, 564 F.3d 1280, 1285 (11th Cir. 2009). "'[W]hen a defendant chooses to testify, he runs the risk that if disbelieved the jury might conclude the opposite of his testimony is true.'" *United States v. Williams*, 390 F.3d 1319, 1325 (11th Cir. 2004). The evidence need not exclude every reasonable hypothesis of innocence for a reasonable jury to find guilt beyond a reasonable doubt. *United States v. Bell*, 112 F.4th 1318, 1331 (11th Cir. 2024).

To establish the crime of postal theft under 18 U.S.C. § 1709, the government must show that the defendant: (1) was a Postal Service employee; (2) was entrusted with, or came into the possession of, any article or thing intended to be conveyed by the mail; and (3) knowingly embezzled or stole that article or thing. For mail fraud under 18 U.S.C. § 1341, the government must prove: (1) an intentional participation in a scheme to defraud a person of money or property; and (2) the use of the mails in furtherance of the scheme. *United States v. Maxwell*, 579 F.3d 1282, 1299 (11th Cir. 2009). Mail fraud can be proved by circumstantial evidence. *United States v. Robertson*, 493 F.3d 1322, 1330–31 (11th Cir. 2007).

Here, Glover claims that the government failed to put forth sufficient evidence that he committed postal theft on September 16, as charged in Count 1, because, he says, it failed to prove beyond a reasonable doubt the third element -- that is, that he knowingly embezzled mail. 18 U.S.C. § 1709. However, the record contained ample evidence of this element, including that: (1) Reinhardt placed three checks in a mailbox that were picked up on September

16; (2) payroll records, video evidence, and Glover's mail scanning device corroborated that Glover was the postal carrier for Reinhardt that day; (3) surveillance video footage from Reinhardt, not just mere "suspicion" from Reinhardt employee Gremaux, showed Glover placing mail in his backpack; and (4) altered versions of the three checks were later published to a bank. Moreover, it was within the jury's province to disbelieve Glover's claims that he had reached into his backpack for mail from his other job and that he only picked up one piece of mail from Reinhardt; in fact, the jury was entitled to believe the opposite of his testimony was true. *Jiminez*, 564 F.3d at 1285; *Williams*, 390 F.3d at 1325. Further, Glover's claim that mail carrier Quincy Holley worked the Reinhardt route more often than he did in September disregards the evidence that Glover, and not Holley, worked the route on September 16. Thus, there was extensive evidence for the jury to find beyond a reasonable doubt that Glover knowingly embezzled mail and committed postal theft.

As for whether Glover committed mail fraud on September 16, October 3, and October 6, as charged in Counts 3, 5, and 6, Glover says there was insufficient evidence of the first element of mail fraud -- that is, that he intentionally participated in a scheme to defraud a person of money or property. 18 U.S.C. § 1341. Again, however, the record contained ample evidence for the jury to find beyond a reasonable doubt that Glover intentionally participated in his friend Keldric's fraudulent scheme, including that: (1) Keldric twice asked Glover to steal checks for money; (2) police seized a Jack Ingram check from Keldric's car with two of Glover's partial

fingerprints that corresponded to one of his routes; (3) other Jack Ingram checks were seized from Keldric; (4) Glover placed Reinhardt mail in his personal backpack on September 16, and the checks were later forged; and (5) Glover was captured examining and photographing mail on September 16, October 3 and October 6, by surveillance footage, payroll records, and GPS data, while on the route where Reinhardt and Jack Ingram are located. This evidence not only supported the inference that Glover knew of Keldric's scheme but also that Glover intercepted checks from Jack Ingram. The evidence is further corroborated by Glover's messages about the "[n]eed to come on back with these slips," Keldric and a third party's offers to pay him 20% of the total or "30 40 bands" to steal checks, and his concern that others were posting or would snitch on "that scheme." And, again, the jury was entitled to discredit his testimony attempting to explain away the evidence and was not required to find that all other mail carriers were not responsible for the missing checks. *Jiminez*, 564 F.3d at 1285; *Hunt*, 526 F.3d at 745.

In short, the government presented sufficient evidence for the jury to find beyond a reasonable doubt that Glover committed postal theft in Count 1 and mail fraud in Counts 3, 5, and 6, and we affirm as to this issue.

## IV.

We are also unconvinced by Glover's claim that the court erroneously admitted into evidence two videos of him opening packages. Federal Rule of Evidence 404(b) provides generally that

evidence of another "crime, wrong, or act is not admissible to prove a person's character in order to show" action in conformity therewith. Fed. R. Evid. 404(b)(1). This evidence may, however, "be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *Id.* For evidence of other crimes or acts to be admissible under Rule 404(b): (1) it must be relevant to an issue other than defendant's character; (2) there must be sufficient proof to enable a jury to find by a preponderance of the evidence that the defendant committed the act(s) in question; and (3) the probative value of the evidence cannot be substantially outweighed by undue prejudice, and the evidence must satisfy Rule 403. *United States v. Edouard*, 485 F.3d 1324, 1344 (11th Cir. 2007).

Rule 403 allows for relevant evidence to be excluded if the probative value is substantially outweighed by the danger of unfair prejudice. Fed. R. Evid. 403. When applying Rule 403, we view the evidence "'in a light most favorable to its admission, maximizing its probative value and minimizing its undue prejudicial impact.'" *Edouard*, 485 F.3d at 1344 n.8.

Here, Glover challenges the admission of two video recordings -- Exhibits 16 and 17 -- that show him opening mail packages in December, a few months after the conduct charged in the counts of conviction. He did not object to the admissibility of these two exhibits at trial and his pretrial motion did not preserve the issue for appeal, so we review for plain error. *See Brown*, 665 F.3d at 1247.

On this record, we can find no plain error because the district court did not abuse its discretion in admitting the December videos under Rule 404(b) as evidence of intent, motive, plan, and absence of mistake. In one video, Glover is shown in the driver's seat of his mail truck opening three separate packages and inspecting their contents; in the other, Glover opens a pink padded envelope, inspects several cosmetic products inside, and then returns all the contents to the package before resealing the package with its original tape. These videos plainly are relevant to something other than Glover's character because his repeated inspection and invasion of the mail for items of value shows an intent to embezzle, a motive of personal gain, a common plan to embezzle the mail, and the absence of mistake for any isolated incidents. Indeed, the videos undermine his claims that he examined mail to determine if it was junk mail and opened packages because the addressees had asked him to dispose of them. As for his argument that the examination of parcel packages is too dissimilar from the charged acts of examining letters for financial information, it is meritless. His examination of mail in his possession as a mail carrier to determine its contents is the same unlawful behavior, regardless of any differences in the type of physical mail. Further, Glover cites no authority suggesting that the government's evidence should be limited to the dates charged in the indictment. *Cf. United States v. Matthews*, 431 F.3d 1296, 1311–12 (11th Cir. 2005) (holding that inquiries into temporal remoteness are fact-specific, and affirming the admission of evidence from an eight-year-old prior conviction).

Moreover, admission of Exhibits 16 and 17 was not barred by Rule 403 because the district court was free to determine, as it did, that the danger of unfair prejudice did not substantially outweigh their probative value. Fed. R. Evid. 403. As we've noted, viewing the videos in a light most favorable to their admission, they are probative because they depict a common pattern of Glover examining mail to determine what is valuable enough to steal, and evince his intent, motive, plan, and absence of mistake. *Edouard*, 485 F.3d at 1344. As for whether the exhibits prejudiced the jury by displaying a postal carrier opening packages, the jury already had viewed videos showing him putting mail in his backpack, holding mail up to the light to assess its contents, and photographing checks. Because Exhibits 16 and 17 were unlikely to unfairly prejudice the jury, the district court acted well within its discretion in finding that Rule 403 did not prohibit their admission.

Thus, the district court did not err, much less plainly err in admitting Exhibits 16 and 17 under Rule 404(b). Accordingly, we affirm, and we need not consider whether Exhibits 16 and 17 were also admissible as intrinsic evidence of the charged offenses.

## V.

Finally, we disagree with Glover's claim that the district court improperly applied a six-point enhancement under U.S.S.G. § 2B1.1(b)(1)(D) based on an overcalculation of economic loss. The Sentencing Guidelines provide a six-level enhancement to the offense level for a fraud or theft offense involving more than $40,000, but less than $95,000, in loss. U.S.S.G. § 2B1.1(b)(1)(D). The

relevant commentary explains that attributable loss under § 2B1.1(b)(1) "is the greater of actual loss or intended loss." *Id.*, cmt. n.3(A)(2023).[1] The intended loss includes any "intended pecuniary harm that would have been impossible or unlikely to occur." *Id.*, cmt. n.3(A)(ii). "The court need only make a reasonable estimate of the loss." *Id.*, cmt. n.3(C). The Guidelines acknowledge that district courts are in a "unique position" to assess the evidence and make a reasonable estimate of loss, and that "the court's loss determination is entitled to appropriate deference." *Id.* The government must establish the loss attributed to a defendant by a preponderance of the evidence. *United States v. Dabbs*, 134 F.3d 1071, 1081 (11th Cir. 1998). Facts contained in a presentence investigation report ("PSI") are deemed to have been admitted unless a party objects to them before the sentencing court "'with specificity and clarity.'" *United States v. Beckles*, 565 F.3d 832, 844 (11th Cir. 2009).

Under the Guidelines' relevant-conduct provision, defendants involved in a conspiracy or scheme are liable for all acts and omissions that are: (1) within the scheme's scope; (2) further the scheme; and (3) reasonably foreseeable. U.S.S.G. § 1B1.3(a)(1)(B).

---

[1] We've said that courts "may not defer" to Sentencing Guidelines commentary "if 'uncertainty does not exist'" in the Guidelines itself. *United States v. Dupree*, 57 F.4th 1269, 1275 (11th Cir. 2023) (*en banc*). Regardless, we've held that § 2B1.1(b)(1)'s definition of "loss" includes "intended loss" under the Guidelines in effect at the time of Glover's sentencing, without looking to the commentary. *United States v. Horn*, 129 F.4th 1275, 1300 (11th Cir. 2025). It's also worth noting that neither party here contested the commentary's validity or the propriety of its interpretation of § 2B1.1(b)(1)'s text. *United States v. Jews*, 74 F.4th 1325, 1327 n.2, 1328 (11th Cir. 2023).

Defendants are liable for the total loss amount of the conspiracy when actively involved in furthering the conspiracy's overall objective. *United States v. Wheeler*, 16 F.4th 805, 830 (11th Cir. 2021).

"[A] jury's verdict of acquittal does not prevent the sentencing court from considering conduct underlying the acquitted charge, so long as that conduct has been proved by a preponderance of the evidence." *United States v. Watts*, 519 U.S. 148, 157 (1997). So, "under our longstanding precedent, relevant conduct of which a defendant was acquitted may be taken into account in sentencing for the offense of conviction, as long as the Government proves the acquitted conduct relied upon by a preponderance of the evidence." *United States v. Cavallo*, 790 F.3d 1202, 1233 (11th Cir. 2015) (citation modified). Indeed, a verdict of acquittal "does not mean that the defendant is innocent of any particular aspect of the charged criminal conduct; it simply means that the Government failed to prove the defendant guilty beyond a reasonable doubt of the charged offense." *United States v. Maddox*, 803 F.3d 1215, 1221 (11th Cir. 2015).

Here, the district court did not clearly err in calculating that $83,753.17 of economic loss resulted from Glover's offenses. First, a preponderance of the evidence established that Glover stole the three checks he picked up from Reinhardt on September 16 because Reinhardt specifically placed those three checks together to determine the thief's identity, surveillance footage showed Glover pick up Reinhardt's mail and place mail in his personal backpack,

and the three checks were later published to a bank. The checks' total value of $10,090.49 was properly attributed to Glover.

Nor did the court clearly err by attributing to him loss from Jack Ingram check 108261. Two of his partial fingerprints linked him to the check, the check was from his mail route, and it was seized from Keldric's car, along with 38 other stolen checks and printing equipment. Glover says the check should be excluded because he was acquitted on two counts involving the theft of that check. But he concedes that the Guidelines in effect at the time of his sentencing permitted consideration of acquitted conduct and he cites no authority deeming it unjust for the court to have relied on those Guidelines when the current Guidelines -- amended *after* his sentencing -- precludes reliance on acquitted conduct. Thus, the court properly included $5,487.26 of loss from check 108261.

The court also did not clearly err by calculating economic loss using three other Jack Ingram checks (checks 108241, 108243, 108260) seized from Keldric's car. Glover more likely than not stole these checks because they were from his mail route and were found in Keldric's car, along with the Jack Ingram check with Glover's fingerprints. It is also more likely than not that Glover stole these three Jack Ingram checks in light of his repeated examination and photographing of mail on his route, which included Jack Ingram; Keldric's two requests that Glover steal mail; and Glover's messages about the need for "slips" and his worry that somebody might "snitch" about "that scheme." The three Jack Ingram checks also can be attributed to Glover under § 1B1.3(a)(1)(B) because their

theft was within the scope of the fraudulent mail scheme, their theft furthered the scheme's purpose of personal gain, and the economic loss from the checks was reasonably foreseeable to Glover, who, based on Keldric's offers and the picture of Keldric holding cash, knew Keldric stole checks. The court thus properly attributed the $12,130.83 of loss from three other Jack Ingram checks found in Keldric's car. *Wheeler*, 16 F.4th at 830; *Dabbs*, 134 F.3d at 1081.

Lastly, the court did not clearly err by attributing to Glover the $46,725.66 of loss from the remainder of the Jack Ingram checks that were stolen on Glover's postal route, even though these checks were not found in Keldric's car. We've already laid out a plethora of evidence showing that Glover more likely than not stole Jack Ingram's remaining stolen checks, including: (1) the presence of his fingerprints on a Jack Ingram check corresponding to his mail route that was found in Keldric's car; (2) Keldric's two offers asking Glover to steal checks; (3) Glover's examination and photographing mail on numerous occasions while on the route where Reinhardt and Jack Ingram are located; (4) Glover's messages about "slips" and "that scheme"; and (5) his opening of packages on December 3 and 27. Therefore, the court did not clearly err in finding that his offenses resulted in more than $40,000 of loss.[2] We affirm as to this issue as well.

---

[2] As for his claim that Jack Ingram check 109572 should not be included in the calculation because the government did not admit it into evidence, he did not object to its inclusion in the PSI or at trial. *Beckles*, 565 F.3d at 844. In any event, even if we were to exclude Jack Ingram check 109572 (for $9,930.00) in addition to two Reinhardt checks from August 2022 (for $2,081.93 and

24-13514                    Opinion of the Court                    17

**AFFIRMED.**

---

$7,237.00) that he challenges on appeal as being stolen before the events in the indictment, their exclusion would not affect the court's application of a 6-level enhancement because the total economic loss of $83,753.17 is well above the $40,000 threshold for the enhancement. U.S.S.G. § 2B1.1(b)(1)(D).