[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-15130
Non-Argument Calendar
_____

D.C. Docket No. 1:19-cr-20410-KMM-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

REESE CLARKE,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(December 7, 2020)

Before WILSON, ROSENBAUM, and BRASHER, Circuit Judges.

PER CURIAM:

Reese Clarke appeals a 36-month sentence for his conviction as a felon in

possession of ammunition, in violation of 18 U.S.C. § 922(g)(1), and of possession

with intent to distribute a controlled substance within 1,000 feet of a playground, in

violation of 21 U.S.C. §§ 841(a)(1) and 860(a). His total sentence was imposed following a 20-month upward variance from the applicable Guideline range. Clarke argues that this sentence was procedurally unreasonable because the district court impermissibly considered only his bare arrest record in varying upward based on his criminal history. We conclude that the district court did no such thing. On the contrary, the district court considered Clarke's past convictions, arrests, and the conduct underlying those convictions and arrests as part of a general overview of his extensive criminal history when deciding to vary upward. Accordingly, we affirm.

## BACKGROUND

On July 9, 2019, a federal grand jury indicted Reese Clarke for two counts of possession with intent to distribute marijuana within 1,000 feet of a playground, in violation of 21 U.S.C. §§ 841(a), 860(a) (Counts 1 and 3). It also indicted him for being a felon in possession of ammunition, in violation of 18 U.S.C. § 922(g)(1) (Count 2). Clarke pleaded guilty to Counts 2 and 3, and the government agreed to dismiss Count 1.

In Clark's presentence investigation report ("PSR"), the probation officer calculated a criminal history category of III based on Clarke's five convictions for petit theft. The probation officer also reported that Clarke had many more adult convictions that did not accrue criminal history points. These convictions consisted mainly of drug, driving, theft, and resisting infractions. The probation officer

2

detailed Clarke's "Other Criminal Conduct," which included over 20 arrests for which Clarke was never convicted. The PSR described the conduct underlying all but two arrests. For most of these arrests, the charges were dismissed, no actioned, or nolle prossed.

Clarke lodged two objections to the PSR unrelated to this appeal. The government requested that the court overrule the objections. In the same filing, the government included a written request for an upward variance, arguing that the Guideline calculation reflected in the PSR "d[id] not adequately account for [Clarke's] criminal history." The government emphasized that most of Clarke's prior convictions earned no criminal history points and had resulted in lenient sentences. The government also noted that Clarke had "another twenty-plus arrests" over "the past twenty years," including "arrests for aggravated assault with a firearm (twice), robbery, battery, violence against women, and many other crimes with no resulting conviction."

At the sentencing hearing, Clarke responded to the government's written request for a variance. His attorney objected to the government's reliance on Clarke's prior arrests:

> [T]he Government's asking the Court to upward vary based on arrests for which Mr. Clarke was not convicted, and in many cases charges were not even filed. I don't think the Court should upward vary based on cases that Mr. Clarke was, indeed, arrested but not convicted of.

3

> I don't think the Government is intending to present any evidence or have any evidence that he should have, in fact, been convicted of any of these cases that he's been arrested for, and I would ask the Court that that does not warrant an upward variance, nor is it appropriate for the Court to upward variance [on] those facts.

Clarke's attorney further argued that Clarke's criminal history was not underrepresented, emphasizing that his prior drug convictions—the most recent occurring in 2007—were too old to trigger any criminal history points and involved small amounts of drugs. She concluded that "there is nothing unique or aggravating about Mr. Clarke's priors that would pull them out of the typical case contemplated by the Sentencing Guidelines."

The government responded that "Mr. Clarke's 51 paragraphs of criminal history[,] . . . multiple controlled substance offense convictions [and] convictions for other serious crimes" warranted an upward variance. The government argued that Clarke was assigned a lower base offense level only because he had been treated so leniently so many times by state courts—"he got a slap on the wrist every time." The government argued that Clarke's continued criminal activity, despite many opportunities to correct his behavior, warranted an upward variance.

The court agreed with the government that "the guidelines calculation fail[ed] to adequately take into account [Clarke's] criminal history" and that "an upward variance is warranted." After calculating the Guideline range to be 10 to 16 months, the court explained its rationale for an upward variance. The court noted that the

4

Guidelines did not account for the presence of children in the apartment where he illegally possessed ammunition and marijuana. It also noted Clark's continued "drug trafficking between his January and June arrests in this case" as well as his attempt to destroy evidence during the June arrest.

Only then did the court turn to Clarke's criminal history, reciting numerous paragraphs of the PSR into the record. The court first recited the PSR paragraphs documenting Clarke's many juvenile and adult convictions. The court then recited paragraphs of the PSR documenting his prior arrests. For some of the 23 arrests recited, the court referred to the charges alone, making no mention of underlying conduct in the PSR. For other arrests, the court recited the underlying conduct from the PSR, all taken from arrest affidavits. For two of those arrests, the recited PSR facts included Clarke's denial of the conduct in question.

After reciting Clarke's criminal history from the PSR, the court determined there was "ample evidence to support the conclusion . . . that [Clarke's] criminal history category seriously understates the otherwise applicable guideline range" and that it would "vary upward accordingly." Before imposing sentence, the court stated that it had "considered the statements of all parties, the presentence report, which contains advisory guidelines and the statutory factors as set forth in Title 18, United States Code, Section 3553(a)." The court then imposed a sentence of 36 months.

Defense counsel objected to the sentence as procedurally unreasonable. On December 23, 2019, Clarke appealed.

## STANDARD OF REVIEW

We review the reasonableness of a sentence for abuse of discretion. *Gall v. United States*, 552 U.S. 38, 53 (2007). However, "a sentence can be unreasonable, regardless of length, if it was substantially affected by the consideration of impermissible factors." *United States v. Clay*, 483 F.3d 739, 745 (11th Cir. 2007). We review *de novo* a defendant's allegation that the district court considered impermissible sentencing factors. *United States v. Stanley*, 739 F.3d 633, 652 (11th Cir. 2014). In this context, a sentence is unreasonable only if it was "substantially affected by the consideration of impermissible factors." *Id.*

## DISCUSSION

On appeal, Clarke argues that the district court should be reversed because it relied on his arrest record in upwardly varying from the advisory guideline range. Specifically, he argues that the district court (1) assumed that Clarke was guilty of crimes for which he was merely arrested, but not convicted; (2) impermissibly relied on Clarke's "bare arrest record" in determining his sentence; and (3) relied on conduct underlying Clarke's prior arrests without requiring the government to

6

establish that conduct by a preponderance of the evidence. We address each argument in turn.

First, the district court did not assume that Clarke was guilty of the crimes for which he was merely arrested. The district court never stated that it was basing its variance on a belief that Clarke committed these crimes. Instead, it asserted that an upward variance was justified in part by Clarke's overall "criminal history" and recited portions of the PSR's summary of that history at the sentencing hearing. The relevant sentencing factor considered by the district court was not that Clarke supposedly committed the crimes for which he was arrested. Rather, it was that Clarke repeatedly engaged in criminal conduct despite multiple past convictions and frequent encounters with law enforcement.

Second, the district court did not impermissibly rely on Clarke's "bare arrest record" in deciding to vary upward. Although Clarke has cited authority for the proposition that a court may not rely on a defendant's bare arrest record when considering an upward departure under the advisory guidelines, a departure and a variance are two different things. *See United States v. Kapordelis*, 569 F.3d 1291, 1316 (11th Cir. 2009) (holding that departures and variances are different mechanisms resting on different rationales). A variance is not based on the guidelines because it is a "sentence set outside the advisory guidelines range." *United States v. Irizarry*, 458 F.3d 1208, 1212 (11th Cir. 2006). We have frequently

7

affirmed upward variances where the sentencing court considered, among other things, a defendant's prior arrests as part of his overall criminal history. *See, e.g.*, *United States v. Shaw*, 560 F.3d 1230, 1232–41 (11th Cir. 2009) (affirming an 83-month upward variance where the district court partially based the sentence on the defendant's numerous prior arrests); *United States v. Faust*, 456 F.3d 1342, 1348 (11th Cir.2006) (holding that a sentencing court could consider facts underlying acquitted conduct).

Here, the upward variance was based on no fewer than four factors: (1) the presence of children in the apartment where Clarke illegally possessed ammunition and marijuana; (2) Clarke's continued drug trafficking between the January search of his apartment and his June arrest; (3) Clarke's attempt to destroy evidence during the June arrest; and (4) Clarke's criminal history. In reviewing Clarke's criminal history, the district court relied on the entirety of the PSR, which contained a summary of Clarke's many prior convictions and arrests, including Clarke's underlying conduct. It was proper for the district court to consider these facts because Clarke never objected to the information contained in that summary. *See United States v. Beckles*, 565 F.3d 832, 844 (11th Cir. 2009) ("[A] defendant's failure to object to conclusory statements in the PSR renders those statements undisputed and permits the sentencing court to rely upon them without error even if there is an

8

absence of supporting evidence.") (citing *United States v. Hedges*, 175 F.3d 1312, 1315 (11th Cir.1999)).

Third and finally, we reject Clarke's argument that the district court improperly relied on facts contained in his PSR without requiring the government to prove them by a preponderance of the evidence. Again, if a defendant fails to object to the facts in his PSR, he admits those facts as true for purposes of sentencing. *United States v. Shelton*, 400 F.3d 1325, 1330 (11th Cir. 2005); FED. R. CRIM. P. 32(i)(3)(A) ("At sentencing, the court . . . may accept any undisputed portion of the presentence report as a finding of fact[.]"). Challenges to facts contained in a PSR "must be asserted with specificity and clarity." *United States v. Bennett*, 472 F.3d 825, 832 (11th Cir. 2006). Clarke failed to object to any of the facts contained in the criminal history section of his PSR, including the conduct underlying his arrests or the fact that those arrests occurred. Accordingly, he has admitted those facts for sentencing purposes, and the government was not required to then prove them by a preponderance of the evidence.

## CONCLUSION

For the foregoing reasons, we **AFFIRM**.

9