**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

_____

No. 24-14110

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

JOHANNA MICHELY GARCIA,

*Defendant- Appellant.*

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:23-cr-20350-JEM-1

_____

Before LUCK, LAGOA, and BRASHER, Circuit Judges.

PER CURIAM:

Johanna Garcia appeals her 240-month sentence for conspiracy to commit wire and mail fraud in violation of 18 U.S.C. § 1349. She argues that the district court miscalculated her Sentencing

Guidelines range by including both substantial hardship and vulnerable victim enhancements. *See* United States Sentencing Guidelines § 2B1.1(b)(2)(C) (Nov. 2024); U.S.S.G. § 3A1.1(b). She also argues that the district court imposed a substantively unreasonable sentence by failing to consider the need to avoid unwarranted sentencing disparities under 18 U.S.C. § 3553(a)(6). We affirm.

## I.

This is a case about a $200 million Ponzi scheme. According to the parties' factual proffer, Garcia operated three related companies—MJ Capital, MJ Taxes and More, and MJ Enterprise Inc.—ostensibly for the purpose of providing merchant cash advances to small businesses. Garcia solicited money from investors to fund MCAs by promising significant returns. In reality, Garcia and her co-conspirator employees were running a classic Ponzi scheme. They paid prior investors with new investor funds and diverted the rest of the money for their personal use.

During this time, Garcia was manager, president, and CEO of MJ Capital and its related entities. In these roles, she was responsible for the "day to day operations" of her companies. She was an authorized signer for all bank accounts and controlled receipt and disbursement of much of the money raised during the scheme. She was not alone, however. Garcia also received significant support from her co-conspirator Pavel Ruiz, who joined the conspiracy nine months after it began. Ruiz assisted Garcia in managing the various MJ entities and oversaw a group of fifty subordinates. He

was described as Garcia's "right-hand-man." Presentence Investigation Report ¶ 55.

After receiving a complaint filed by a victim investor, the FBI and SEC investigated and closed MJ Capital. Undeterred, Garcia began operating a new venture, appropriately named New Beginning Global Funding LLC. Garcia and others raised at least $3 million from about twenty individuals, including an 84-year-old victim who allegedly suffered from dementia. Garcia repeatedly coaxed the victim into transferring his savings to her. She ultimately obtained over $1.2 million of the victim's money.

The government charged Garcia with, *inter alia*, conspiracy to commit wire fraud and mail fraud, in violation of 18 U.S.C. § 1349. The charge carries a maximum penalty of 240 months in prison. 18 U.S.C. §§ 1341, 1343. While in custody, Garcia directed her co-conspirators to pressure the 84-year-old victim and his daughter to alter their testimony in advance of the criminal trial. She also directed her co-conspirators to access frozen assets and continue conducting the fraud.

Garcia pleaded guilty to the conspiracy charge. In return, the government agreed to seek dismissal of the remaining counts in the indictment, which the district court accepted. While the parties prepared for sentencing, Ruiz pleaded guilty to fraudulently obtaining approximately $43 million from investors and was sentenced to 110 months in prison.

Before sentencing, the Probation Office prepared a presentence report in which it calculated Garcia's offense level. Based on

an SEC accountant's analysis, the report concluded that Garcia and her co-conspirators had fraudulently obtained approximately $196 million. Subtracting the money paid back to investors, Garcia was responsible for an actual loss of about $86 million. The report concluded that the fraud "resulted in a substantial hardship to 25 or more victims," meriting a 6-point offense-level increase under U.S.S.G. § 2B1.1(b)(2)(C). Presentence Investigation Report ¶ 109. The report also increased Garcia's offense level by 2 points under U.S.S.G. § 3A1.1(b)(1) because she "knew or should have known that a victim of the offense was a vulnerable victim." *Id.* ¶ 112. Garcia's total offense level was 48 and her criminal history category was I. Because the maximum offense level in the Sentencing Guidelines sentencing table is 43, her offense level was treated as 43, which mandates life in prison. *See* U.S.S.G. Ch. 5, Pt. A, cmt. n.2. But where, as here, the statutorily authorized maximum sentence is less than the minimum of the applicable guidelines range, the statutorily authorized maximum sentence is the guideline sentence. U.S.S.G. § 5G1.1. Thus, Garcia's guideline sentence was 240 months.

Garcia filed objections to the report and sentencing calculations. Relevant here, she argued that the correct loss amount was $86 million rather than $196 million. She also objected to the substantial hardship and vulnerable victim enhancements, arguing that they were factually unsupported. The government filed its response, which included victim impact letters and a spreadsheet detailing the amount of loss suffered by thirty-five of Garcia's victims.

At sentencing, the government agreed to adopt the $86 million figure, which reduced Garcia's offense level from 48 to 46. *See* U.S.S.G. § 2B1.1(b)(1)(M). This had no effect on her guideline sentence. Following colloquy with Garcia's attorneys, the district court denied each of her objections. The district court then permitted three of Garcia's victims to testify to the substantial financial impact the fraud had on them.

The district court then turned to the 18 U.S.C. § 3553(a) sentencing factors. Garcia asserted that she had taken responsibility and apologized for her wrongdoing. She requested a sentence in line with Ruiz's, arguing that their conduct was comparable and that the court was obligated to avoid "unwarranted sentence disparities" among similarly situated defendants. The district court disagreed, concluding that Garcia's relative level of involvement in the scheme was "substantially different." D.E. 86 at 58. Having considered the parties' filings, the presentence report, and the section 3553(a) factors, particularly the need for deterrence, the court sentenced Garcia to the statutory maximum: 240 months.

Garcia timely appealed.

## II.

We review the procedural reasonableness of a sentence, including whether the guidelines range was properly calculated, for abuse of discretion. *United States v. Gyetvay*, 149 F.4th 1213, 1239 (11th Cir. 2025). We also review the substantive reasonableness of a sentence for abuse of discretion. *United States v. Fox*, 926 F.3d 1275, 1278 (11th Cir. 2019). A district court abuses its discretion in

sentencing when it (1) fails to afford consideration to relevant factors that were due significant weight, (2) gives significant weight to an improper or irrelevant factor, or (3) commits a clear error of judgment in considering the proper factors. *United States v. Howard*, 28 F.4th 180, 205 (11th Cir. 2022) (citation modified).

## III.

Garcia makes two main arguments. First, she contends that the district court imposed a procedurally unreasonable sentence by miscalculating the guidelines range. She believes that the government failed to adequately support the substantial financial hardship and vulnerable victim enhancements the district court applied. Second, she argues that the district court committed both procedural and substantive errors by ignoring section 3553(a)(6)'s requirement that courts avoid "unwarranted sentence disparities" among similarly situated defendants. We disagree.

Determining whether a sentence is procedurally or substantively unreasonable involves two steps. First, we ask whether the district court committed any significant procedural errors, such as improperly calculating the guidelines range. Second, we analyze the substantive reasonableness of the sentence imposed, considering the totality of the circumstances. *Gall v. United States*, 552 U.S. 38, 51 (2007).

Garcia's procedural challenge to her guidelines range calculation fails because any error is harmless. We need not decide whether a district court erroneously applied enhancements when a decision either way will not affect the outcome. *United States v.*

*Focia*, 869 F.3d 1269, 1287 (11th Cir. 2017). When a defendant's guidelines range is the same with or without the enhancement, any potential error is harmless. *United States v. Mathis*, 767 F.3d 1264, 1284 (11th Cir. 2014). Here, any error was harmless because, even without the alleged errors, the lower end of Garcia's guidelines range would still have been greater than the statutory maximum.

Garcia's final offense level was 46. Her financial hardship and vulnerable victim enhancements were worth 8 points. *See* U.S.S.G. § 2B1.1(b)(2)(C) (6 points for financial hardship); *id.* § 3A1.1(b)(1) (2 points for vulnerable victim). Although Garcia argues that her resulting offense level should therefore be 38, she is missing a step. For financial crimes involving stolen property and fraud, the Sentencing Guidelines provide for either a 2-level, 4-level, or 6-level enhancement based off the number of victims and severity of the crime. *See* U.S.S.G. § 2B1.1(b)(2). Were section 2B1.1(b)(2)(C) not in play, the district court would still have increased her offense level by 2 points under section 2B1.1(b)(2)(A), which applies instead if the fraud "involved 10 or more victims." Garcia concedes in her brief that this enhancement applies. *See* Blue Br. at 31. In her factual proffer, she admitted to obtaining fraudulent investments from "at least twenty individuals." D.E. 45 at 3. Portions of the presentence report that she did not object to stated that Garcia's companies defrauded approximately 15,400 investors. *See United States v. Beckles*, 565 F.3d 832, 844 (11th Cir. 2009) (facts contained in a presentence report are undisputed and deemed to have been admitted unless a party objects to them before the sentencing court with specificity and clarity).

8                    Opinion of the Court                    24-14110

Because her fraud indisputably involved at least 10 victims, Garcia would have been subject to the 2-point enhancement under section 2B1.1(b)(2)(A). Thus, her adjusted total offense level would have been 40. Under the Sentencing Guidelines sentencing table, her guidelines range would have been 292-365 months. *See* U.S.S.G. Ch. 5, Pt. A. Accordingly, her guideline sentence would still have been her statutory maximum, 240 months. U.S.S.G. § 5G1.1. Because the range would have been the same no matter what, any error is harmless. *Focia*, 869 F.3d at 1287.

Garcia's other procedural objection—that the district court ignored section 3553(a)(6)—is easily dispatched. The district court explicitly considered the need to avoid unwarranted sentencing disparities. The court discussed at length the potential sentencing disparity between Garcia and Ruiz, ultimately determining that Garcia's relative involvement was "substantially different." D.E. 86 at 58. In justifying the sentence, the district court also expressly considered "the statements of all the parties, the presentence report, which contains the advisory guidelines, and the statutory factors set forth in 18 U.S.C. Section 3553(a)." *Id.* at 61. The district court's sentencing decision was thus procedurally sound. *See Gall*, 552 U.S. at 51 (proper procedure requires district courts to consider the section 3553(a) factors and adequately explain the chosen sentence).

Finally, we also reject Garcia's contention that her sentence is substantively unreasonable. At the outset, she faces an uphill battle because her sentence was within the guidelines range. Although

we do not formally presume that a within-guidelines-range sentence is reasonable, we "ordinarily expect it to be." *United States v. Sotelo*, 130 F.4th 1229, 1245 (11th Cir. 2025).

Garcia's main argument is that she received a substantially higher sentence relative to Ruiz for the same conduct. But the evidence suggested that, far from being equally culpable, Garcia was the mastermind behind the scheme. She founded MJ Capital and its related entities, all of which were named after her. The website listed her as the CEO and ultimate decisionmaker, sitting atop a large hierarchy that included Ruiz. Although Ruiz had substantial authority as Garcia's business partner, Garcia retained ultimate control over how money was spent and disbursed. Ultimately, Garcia was responsible for significantly greater losses than Ruiz ($86 million versus $43 million). The district court did not abuse its discretion in holding that Garcia's involvement was "substantially different." D.E. 86 at 58. Because a well-founded claim of disparity under section 3553(a)(6) "assumes that apples are being compared to apples," Garcia's objection fails. *United States v. Sotis*, 89 F.4th 862, 880 (11th Cir. 2023).

Other sentencing factors weigh in favor of reasonableness. The district court reasonably concluded that a lengthy prison sentence was necessary "to reflect the seriousness of the offense," "provide just punishment," and "afford adequate deterrence." 18 U.S.C. § 3553(a)(2)(A)-(B). Garcia's criminal conduct caused enormous levels of suffering. As the government's exhibits showed, her

scheme wiped out many of her victims' retirement savings accounts. After the FBI and SEC shuttered MJ Capital, Garcia began operating a new Ponzi scheme that was responsible for an additional $3 million in losses. Even after she had been arrested, Garcia continued to engage in wrongdoing by directing her co-conspirators to pressure witnesses and access frozen assets. Considering the need for deterrence, the district court did not abuse its discretion in concluding that this factor was particularly weighty. *See United States v. Clay*, 483 F.3d 739, 743 (11th Cir. 2007) (the weight to be accorded any given sentencing factor is a matter committed to the sound discretion of the district court).

Finding neither procedural nor substantive errors, we hold that the district court did not abuse its discretion in sentencing Garcia to 240 months. *Gall*, 552 U.S. at 51.

## IV.

**AFFIRMED.**